UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------- x

NEW YORK CITY COUNCIL MEMBER YDANIS
RODRIGUEZ, et. al.,

                                     Plaintiffs,

                   -against-

DEPUTY INSPECTOR EDWARD WINSKI, et. al.,

                                Defendants.

---------------------------------------------------------------- x

**Index No. 1:12-cv-03389-NRB**

ECF CASE

---

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MTA DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

---

Yetta G. Kurland, Esq.
The Kurland Group
*Attorneys for Plaintiffs*
350 Broadway, Suite 701
New York, NY 10013
(212) 253-6911

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ...................................................................................................... 2

ARGUMENT ......................................................................................................................... 2

   I. DEFENDANTS' MOTION TO DISMISS MUST BE DENIED ........................................ 2

     A. Legal Standard Governing Motion to Dismiss ........................................................ 2

       1. MTA's Custom or Policy Deprived Plaintiff of his Constitutional Rights ............ 3

       2. Commissioner Coan is Implicated in Plaintiffs' Conspiracy Claims ..................... 5

       3. Lieutenant Lakeram is Liable to Plaintiff in Her Individual Capacity ................. 6

          a.    Defendants were Motivated By and Chilled Plaintiff's Exercise of His First
             Amendment Rights ................................................................................. 6

          b.    Defendants Exercised Excessive Force in Arresting Plaintiff, in Violation of
             His Rights Fourth Amendment Rights .................................................... 9

       4. Plaintiff's New York State Constitutional Claims are Sufficiently Pled and Should
         Therefore Survive a Motion to Dismiss ................................................... 11

       5. Plaintiffs Have Pled a Valid Cause of Action for Conspiracy ............................. 12

          a.    Plaintiffs have sufficiently pled a conspiracy claim ............................. 13

          b.    Conspiracies are secretive and may be proven by circumstantial evidence .. 15

       6. Plaintiffs Have Pled a Valid Claim Against the MTA Based on Respondeat
         Superior ................................................................................................ 16

   II. DEFENDANTS' REQUEST FOR SEVERANCE MUST BE DENIED ..................... 16

     1. Plaintiffs' claims arise out of the same series of transactions and occurrences .... 18

     2. Plaintiffs' claims present common questions of fact and law ............................... 18

     3. Plaintiffs' claims will involve the same witnesses and evidence ........................... 19

     4. Joinder of Plaintiffs' claims promotes judicial economy and avoids inconsistent
       judgments ................................................................................................ 19

   CONCLUSION ...................................................................................................... 20

Plaintiffs NEW YORK CITY COUNCIL MEMBER YDANIS RODRIGUEZ, NEW YORK CITY COUNCIL MEMBER JUMAANE WILLIAMS, JOHN KNEFEL, NEW YORK CITY COUNCIL MEMBER LETITIA JAMES, JUSTIN SULLIVAN, JEFFERY MCCLAIN, NEW YORK CITY COUNCIL MEMBER MELISSA MARK-VIVERITO, STEPHANIE KEITH, DEMOCRATIC DISTRICT LEADER PAUL NEWELL, JUSTIN WEDES, PETER DUTRO, TIMOTHY FITZGERALD, PAUL SULLIVAN, MICHAEL RIVAS, YONATAN MILLER, CHARLES MEACHAM, and THE NATIONAL PRESS PHOTOGRPAHERS' ASSOCIATION, (hereinafter referred to collectively as "Plaintiffs") by and through their attorneys, The Kurland Group, Stoll, Glickman & Bellina, LLP, and Stecklow Cohen & Thompson hereby submit Plaintiffs' Memorandum of Law in Opposition to the Motion to Dismiss Plaintiffs' First Amended Complaint of Defendants THE METROPOLITAN TRANSIT AUTHORITY, METROPOLITAN TRANSIT AUTHORITY POLICE COMMISSIONER MICHAEL COAN,  METROPOLITAN TRANSIT AUTHORITY LIEUTENANT OMEETA LAKERAM (hereinafter referred to collectively as "MTA Defendants").

## PRELIMINARY STATEMENT

The MTA Defendants' Motion to Dismiss must be denied because the MTA Defendants have failed to meet the heavy burden of proof required to sustain a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

Plaintiffs maintain that they have forty-nine (49) validly pled causes of action based on Defendant's violation of their rights secured by 42 USC § 1983 and the First, Fourth, and Fourteenth Amendments to the United States Constitution, and the laws and Constitution of the State of New York and rules and regulations of the City of New York.

1

## STATEMENT OF FACTS

Plaintiffs will not restate the complete set of facts in this matter as they are clearly articulated in the First Amended Complaint (hereinafter referred to as "FAC"), including the numerous exhibits attached to the FAC, except to state that Plaintiffs have alleged the necessary factual details to support their causes of action. In specific, Plaintiffs include allegations regarding the incidents, locations, actors and details, which when construed with all reasonable inferences in Plaintiffs' favor, support their causes of action.

## ARGUMENT

## I. DEFENDANTS' MOTION TO DISMISS MUST BE DENIED

### A. Legal Standard Governing Motion to Dismiss

In the Court's analysis of the Defendants' motions to dismiss, the factual allegations in the Plaintiffs' FAC are to be accepted as true and all reasonable inferences drawn in Plaintiffs' favor. Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006). "[D]etailed factual allegations" are not required, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), and instead Plaintiffs are expected to "state a claim to relief that is plausible on its face." Id. at 570. Further, pursuant to Brass v. American Film Technologies, Inc., 987 F.2d 142, 150 (2d Cir. 1993):

> [w]hen determining the sufficiency of plaintiffs' claim for *Rule 12(b)(6)* purposes, consideration is limited to [1] the factual allegations in plaintiffs' amended complaint, which are accepted as true, [2] to documents attached to the complaint as an exhibit or incorporated in it by reference, [3] to matters of which judicial notice may be taken, or [4] to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.

Not only do Plaintiffs' claims state particularities, including specific incidents, locations, actors and details, Plaintiffs' claims more importantly have facial plausibility because the facts as pled

show the Court that when all reasonable inferences are drawn in Plaintiffs' favor, the Defendants are liable for the misconduct alleged.  Id. at 556.  Since the Plaintiffs here have pled sufficient factual allegations "to raise a reasonable expectation that discovery will reveal evidence" further supporting their causes of action, Defendants' motions to dismiss must be denied.  Id.

If evidence is submitted on an FRCP 12 motion that is not part of the pleadings, and the Court does not exclude such evidence, FRCP 12(d) states that:

> the motion must be treated as one for summary judgment under Rule 56.
> All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

"On a motion for summary judgment, all factual inferences must be drawn in favor of the non-moving party." Miller v. Wolpoff & Abramson, L.L.P., 321 F.3d 292, 300 (2nd Cir. 2003), citing Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc., 192 F.3d 337, 343 (2d Cir. 1999). "Summary judgment is appropriate only if the moving party shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law."  Id.

Lastly, a party's failure to respond to all or part of an opponent's 12(b)(6) motion does not constitute a default warranting dismissal of the complaint; "the sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law." McCall v. Pataki, 232 F.3d 321, 322-3 (2d Cir. 2000).

### 1.   MTA's Custom or Policy Deprived Plaintiff of his Constitutional Rights

In order to establish Defendants' liability, Plaintiffs are not required to show that MTA had an explicit rule or regulation. DeCarlo v. Fry, 141 F.3d 56, 61 (2d Cir. 1998) citing Ricciuti v. New York City Transit Auth., 941 F.2d 119, 1236 (2d Cir.1991). Rather, a policy or custom may be inferred from acts or omissions of a municipality's supervisory officials serious enough to amount to gross negligence or deliberate indifference to the constitutional rights of the

3

plaintiff.  Villante v. Department of Corrections of City of New York, 786 F.2d 516, 518 (2d Cir. 1986). In the FAC, Plaintiffs allege a far-reaching policy or custom which has systematically functioned to deprive Plaintiffs of their Constitutional rights.  For example, in the FAC ¶¶ 145-173, Plaintiffs allege that the NYPD has conspired with its co-defendants to suppress citizen journalists, Plaintiff Sullivan included. The NYPD has created a system of "credentials," which not only infringes on the First Amendment rights of the press, but also submits the non-credentialed journalists to the constant threat of arrest and persecution.  The MTA Defendants participated in this policy when it furthered the custom of "arrest to suppress" in its actions towards Plaintiff Justin Sullivan.

The MTA Defendants claim that this is the only incident in which Plaintiffs could plausibly assert that the MTA Defendants played any role in the Occupy Wall Street (hereinafter "OWS") movement.  Not only is this an attempt to downplay an event where the MTA Defendants made multiple arrests of OWS participants, but there have been many instances where the MTA Defendants played a role in the OWS movement.  For example, activists associated with OWS chained entrances to the subway at various subway stops open and posted signs indicating that there was no fare required.  See Nick Pinto, "Occupy Wall Street Affiliates Chain Subway Gates Open For Fare Strike," The Village Voice Blogs, March 29, 2012, incorporated by reference herein and available online at http://blogs.villagevoice.com/runninscared/2012/03/occupy_wall_str_50.php, last accessed 01/18/13.  OWS protesters along with members of the Transportation Workers Union attended a meeting of the MTA's board in an effort to comment on the negotiations between the MTA and Union.  See Dana Rubinstein, "Protesters say the M.T.A. has money for pay and service increases, and the M.T.A. begs to differ," Capital New York, February 29, 2012, incorporated by reference herein and available

online at http://www.capitalnewyork.com/article/politics/2012/02/5372774/protesters-say-mta-has-money-pay-and-service-increases-and-mta-begs, last accessed 01/18/13. What is more, the MTA has worked closely with the other Defendants in this matter to deprive or facilitate each agencies' violations of the rights of Plaintiffs and other OWS participants, including the NYPD commandeering MTA buses for the transport of arrestees. *See* Emily Anne Epstein, "NYPD ousts riders off bus to transport arrested Occupy Wall Street protesters," Metro, March 28, 2012, incorporated by reference herein and available online at http://www.metro.us/new york/local/article/1137248--nypd-ousts-riders-off-bus-to-transport-arrested-occupy-wall-street-protesters.

Finally, even assuming *arguendo* that the incident at Grand Central Station is the only incident between the MTA and OWS, which it is not, this would not be dispositive. Indeed, "a single act by a municipality may amount to municipal policy if ordered by a person whose edicts or acts may fairly be said to represent official policy." Lopez v. Bay Shore Union Free School Dist., 668 F.Supp.2d 406, 417 (E.D.N.Y. 2009) *citing* Rookard v. Health and Hospitals Corp., 710 F.2d 41, 45 (2d Cir.1983). As such, Plaintiffs have clearly alleged that the MTA had a policy or custom that caused Plaintiff Sullivan to be denied his constitutional rights, and therefore the MTA Defendants' Motion to Dismiss should be denied.

### 2. Commissioner Coan is Implicated in Plaintiffs' Conspiracy Claims

Plaintiffs' conspiracy claims are discussed more fully below, however, the MTA Defendants admit in their Motion to Dismiss that the FAC alleges an agreement between state actors and private entities. In his capacity as Commissioner of the Metropolitan Transit Authority, a state employee, Defendant Coan is a state actor for §1983 purposes when he acts within the scope of his employment. Guadagni v. New York City Transit Authority, 2009 WL 1910953, fn. 5

(E.D.N.Y. June 30, 2009).  Further, Plaintiffs allege that Commissioner Coan acted in concert with his co-defendants to inflict numerous constitutional injuries on all Plaintiffs in this action. Finally, the FAC contains numerous, specific allegations of overt acts done in furtherance of this goal (*See* FAC ¶¶ 161 – 173, 865 - 895). As such, Plaintiffs have sufficiently pled the elements of conspiracy and all claims brought against Defendant Coan should survive Defendants' Motion.  Ciambriello v. County of Nassau, 292 F.3d 307, 324-25 (2d Cir. 2002) *see also* FAC ¶¶ 174-207).

### 3.  Lieutenant Lakeram is Liable to Plaintiff in Her Individual Capacity

Lieutenant Lakeram (as well as Commissioner Coan), as an employee of the MTA, is a State employee and is "not otherwise [a] private person[]" when she acted within the scope of her employment to deprive Plaintiff Sullivan of his rights.  Guadagni v. New York City Transit Authority, 2009 WL 1910953, fn. 5 (E.D.N.Y. June 30, 2009). As such, individual liability under §1983 exists. Id.

### a.  Defendants were Motivated By and Chilled Plaintiff's Exercise of His First Amendment Rights

A plaintiff claiming a violation of First Amendment rights to free speech and free assembly must show "(i) he has an interest protected by the First Amendment; (ii) the defendant's actions were motivated by or substantially caused by the plaintiff's exercise of that right; and (iii) the defendant's action effectively chilled the exercise of the plaintiff's First Amendment rights." Connell v. Signoracci, 153 F.3d 74, 79 (2d Cir. 1998) (internal citations omitted).

On January 3, 2012, Plaintiff Justin Sullivan was filming activities and interactions between OWS participants, the MTA, and the NYPD, at Grand Central Terminal with a flip-style camera and a cell phone (FAC ¶¶867-868).  Specifically, Plaintiff Sullivan was filming arrests of other OWS participants made by the MTA (FAC ¶513).   Plaintiffs allege that Lieutenant

Lakeram specifically ordered other officers present to seize Plaintiff Sullivan's camera (FAC ¶164). Justin Sullivan's video camera and data chips have not been returned (FAC ¶¶169-170). This continues to be true as of this writing, despite Mr. Sullivan's continued efforts. Further, Plaintiffs state that a witness reported watching someone who fit Lieutenant Lakeram's description smash an electronic device resembling Plaintiff Sullivan's camera (FAC ¶171).

Contrary to Defendant's assertions, the absence of speech does not render Plaintiff's First Amendment claim facially insufficient (Motion to Dismiss, p.14, *citing* Dotson v. Farrugia, 2012 WL 996997, *5 (S.D.N.Y. March 26, 2012). Rather, the requirement is merely that the speech or act be sufficiently communicative as to warrant First Amendment protection, for example, sitting in a tree has been found to be sufficiently communicative to warrant First Amendment protection. People v. Millhollen, 786 N.Y.S.2d 703 (N.Y.City Ct. 2004). The standard is, "[t]o be entitled to protection under the First Amendment, conduct must be of a sufficiently expressive or associative nature to merit protection under free speech law." Dotson, 2012 WL 996997 at *5. If participating in a nation-wide movement such as OWS, in Grand Central Station, a forum that is traditionally associated with Free Speech (*see* People v. Hedemann, 438 N.Y.S.2d 172, 173 [N.Y.Sup. 1981]), is not sufficiently associative one wonders what conduct Defendants would consider "associative" to warrant First Amendment protection. For this reason Dotson is inapposite. In that case the plaintiff attempted to claim that a "dance motion" he performed when passing through a magnetometer was protected speech. Dotson, 2012 WL 996997 at *5. The District Court disagreed, stating that expressive conduct is that which would lead a viewer to understand the speech being expressed. Id.

There can be no doubt that Justin Sullivan's presence at Grand Central Station during and OWS action was sufficiently associative to Defendants that they treated him as a participant

when they arrested (and re-arrested) him along with other protesters, photographed and fingerprinted him along with other protesters, and arraigned him alongside the other protesters (FAC ¶¶161-166, 172). If for no other reason than the effect it had on Defendants, Justin Sullivan's conduct was sufficiently expressive or associative to support, at this stage in the litigation, an assertion that Plaintiff engaged in Constitutionally-protected speech, even without uttering or being prevented from uttering actual speech.

As for the second prong, Plaintiff Sullivan alleges that Defendants assaulted and arrested him during the exercise of First Amendment rights; this alone is sufficient to show a plausible claim at the pleading stage. Morgan v. County of Nassau, 720 F.Supp.2d 229, 239 (E.D.N.Y. 2010).

Finally, Sullivan's speech was objectively chilled when he was arrested for exercising his First Amendment rights. Even if Justin Sullivan continues to participate in expressive conduct related to OWS, he does so under the threat of false arrest, similar to the one he experienced here. Under Defendants' current practices, an OWS participant is vulnerable to arrest whenever he exercises his free speech rights in connection with the movement. This constant threat creates a chill. Jiovon Anonymous ex rel. Thomas Anonymous v. City of Rochester, 865 N.Y.S.2d 804, 812 (4th Dept. 2008) (holding that the constant threat that a minor could be arrested  for a curfew violation, based on the arresting officer's subjective assessment of whether or not the minor was exercising his or her First Amendment rights worked an impermissible chill). And while Plaintiff Sullivan has expressed an intent to continue to pursue his First Amendment rights, the MTA Defendants, along with the other Defendants in this matter, have conspired to limit the space available to him to exercise those rights by effectively shutting Plaintiff Justin Sullivan out of traditionally public fora, thereby working a chill on his rights.

8

Similarly, <u>Curley v. City of Suffern</u>, 268 F.3d 65 (2d Cir. 2001) is clearly inapposite. The plaintiff in Curley was arrested after a bar room brawl, which he claimed was retaliation for comments he had made several months prior during an unsuccessful run for Village mayor. <u>Id.</u> at 69; *see also* <u>Morrison v. Johnson</u>, 429 F.3d 48, 51(2d Cir. 2005) (holding that the <u>Curley</u> standard did not apply where the plaintiff was a public employee claiming retaliation for engaging in protected activity). Additionally, <u>Curley</u> has also been held to apply particularly in cases where the plaintiff is a private citizen claiming retaliation for criticizing a public official. <u>Gill v. Pidlypchak</u>, 389 F.3d 379, 381 (2d Cir. 2004). Significantly, in cases where plaintiffs have alleged the misapplication of the relevant law code, courts have required only a showing of a causal connection between the protected conduct and the government's response as well as a showing of adequately pled, non-speech injuries. <u>Id.</u> *citing* <u>Gagliardi v. Village of Pawling, 18 F.3d 188 (2d Cir.1994)</u>. Similarly, some courts have found that where, as here, there is a lack of probable cause, "there is no separate chilling requirement in a retaliatory prosecution action." <u>Denia v. New York State Troopers</u>, 2007 WL 869594 (E.D.N.Y. Mar. 20, 2007). For these reasons, it is clear that even if Justin Sullivan continues to participate in activity protected by the First Amendment, this alone is not fatal to his claims of a First Amendment violation.

### b. <u>Defendants Exercised Excessive Force in Arresting Plaintiff, in Violation of His Rights Fourth Amendment Rights</u>

Claims of excessive force are analyzed under the Fourth Amendment "objective reasonableness" standard. <u>Ostrander v. State of New York</u>, 735 N.Y.S.2d 163 (2001). Accordingly, the officer's use of force is judged from the perspective of a reasonable officer on the scene. <u>Graham v. Connor</u>, 490 U.S. 386, 396 (1989). This analysis requires the court to consider (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers and (3) whether the arrestee was actively resisting arrest. <u>Id</u>.

As such, Defendants reliance on cases such as <u>Wims v. New York City Police Dept.</u>, 2011 WL 2946369 (S.D.N.Y. July 20, 2011) and <u>Murray v. Williams</u>, 2007 WL 430419 (S.D.N.Y. Feb 8, 2007) are inapposite because they have to do with isolated incidents related to criminal activity and with no First Amendment implications. In <u>Wims</u>, the defendant was arrested outside his home and charged with Criminal Possession of a Weapon and Criminal Possession of a Controlled Substance With Intent to Sell. <u>Wims</u>, 2011 WL 2946369 at *3. Wims eventually pled guilty to Criminal Possession of a Weapon. <u>Id</u>. Similarly, in <u>Murray</u> the plaintiff was arrested after approaching an undercover officer and attempting to offer him the services of a prostitute and the excessive force claim arose out of a physical altercation that occurred after the arrest. <u>Murray</u>, 2007 WL 430419 at *2. Additionally, under the standard proposed by Defendants, a police officer is entitled to treat citizens exercising their First Amendment right to free speech as if they were a criminal under any other circumstances. While there may be reasons for police to resort to arrest in situations implicating the First Amendment, surely when a peaceful protester is protesting peacefully, a reasonable officer on the scene can avoid employing the same methods they would use to subdue a violent or combative individual.

Unlike the Plaintiffs described above, Justin Sullivan was arrested at a peaceful protest while he was filming the arrests of other OWS participants (FAC ¶161). Plaintiff Justin Sullivan's arrest was precipitated by conflicting instructions he received from officers on the scene. The video attached to Plaintiffs' FAC as Exhibit G shows Lt. Lakeram yelling "Let him in, let him in," while physically directing Justin Sullivan into a group of police officers (Exhibit G, Timestamp 23:00:00). Plaintiff Justin Sullivan has his hands up and is making every effort to comply with Lt. Lakeram's physical and verbal commands. Further, any chaos or confusion was at its end before Plaintiff Justin Sullivan's arrest, the arrest of another OWS participant having

been completed (Id.). While Plaintiff Sullivan was eventually issued a ticket on various counts of assault, it is clear from the video that a single man, arms up, offering no resistance, posed no threat to the group of officers he was being shoved into by a Lieutenant. Viewed in this light, the contrived nature of the underlying crime, the fact that Justin Sullivan posed no immediate threat to the arresting officers, and that he was not resisting arrest, it is clear that Plaintiffs have sufficiently pled a cause of action for excessive force under the standard set forth in Graham, supra. The arrest resulted in Plaintiff Sullivan's 24-hour incarceration and the loss of his flip-style camera and data chips, as well as physical harm and pain and suffering (FAC ¶¶166, 169, & 170). Because the elements enumerated above are satisfied, Plaintiffs have adequately alleged a claim for excessive force and Defendants' motion to dismiss should be denied.

Similarly, because the essential elements of excessive force and state law assault and battery claims are substantially identical, Humphrey v. Landers, 344 Fed.Appx 686 (2d Cir. 2009), Plaintiffs have adequately stated a claim for assault and battery as well.

### 4. Plaintiff's New York State Constitutional Claims are Sufficiently Pled and Should Therefore Survive a Motion to Dismiss

The Court should exercise jurisdiction over pendant New York State Constitution claims. Defendants are getting ahead of themselves by assuming that their sparse, conclusory, and self-serving Motion to Dismiss will be granted at all, much less in its entirety. Similarly, as to Defendants' claims that any cause of action based on the New York State Constitution should be dismissed because Plaintiffs can seek relief elsewhere, it is too early for the Court to dismiss Plaintiff's claims under the New York State Constitution because it is not yet obvious that an alternate remedy exists. Brown v. State of New York, 652 N.Y.S.2d 223 (1996).

Plaintiffs have demonstrated, above, that their claims as alleged in the FAC rise to the pleading standard enunciated in <u>Ashcroft</u> and, similar to the reasons stated above, the court should uphold Plaintiffs' state law claims along with their federal claims.

**5.** **Plaintiffs Have Pled a Valid Cause of Action for Conspiracy**

The MTA Defendants have not met the burden of dismissing Plaintiffs' cause of action for conspiracy, and their Motion to Dismiss this claim must be denied.  It is extremely troubling that Defendants would claim that there was no conspiracy between several individuals and entities named as Defendants herein, in light of the fact that numerous instances have already been discovered and continue to be uncovered as this matter and other matters proceed.  The MTA Defendants' motion in concert with the other motions to dismiss is an attempt to avoid culpability and deny the orchestrated efforts between the parties that gave rise to this claim and to chip away at the Plaintiffs' causes of action. Defendants attempt to sweep their liability under the carpet pointing fingers at other Defendants and various other actors, all the while claiming that Plaintiffs' rights were not violated by the MTA Defendants when it is clear that Justin Sullivan and others were falsely arrested, detained and then prosecuted without clear evidence. The case law is clear that Plaintiffs' complaint does not need to be proven at the pleading stage, and a complaint with allegations of legal feasibility will survive a motion to dismiss.

The MTA Defendants attempt to dismiss the conspiracy and avoid liability for one of the most heinous acts within the overarching conspiracy, namely that their conduct was premeditated and planned, to put into place improper and unlawful arrest, detention, and prosecution procedures, which at its core was the primary goal of depriving individuals who were involved in the Occupy Wall Street movement of their civil liberties.  This deprivation of liberties was committed against the protestors and bystanders that Defendants claim they accommodated—a claim that could not be further from the truth.  The City of New York, the Office of the Mayor,

the MTA, the New York City Police Department, the Department of Corrections, Mitsui Fudosan American, Inc, Brookfield Office Properties, JP Morgan Chase & Co, and other actors worked in concert to deprive protestors, bystanders, and New York City residents of their civil liberties by conducting mass arrests without individualized suspicion to stop individuals or probable cause to arrest them, holding individuals for unreasonable and excessive periods of time, and working together to deprive the federal, state, and local liberties of the very people they were elected or appointed to protect.

### a.  <u>Plaintiffs have sufficiently pled a conspiracy claim</u>

The Second Circuit has clearly established the standard for pleading a conspiracy claim for violation of civil rights.  In order to survive a claim for conspiracy under §1983, the Plaintiffs must allege (1) an agreement between two or more state actors, (2) concerted acts to inflict unconstitutional injury, and (3) an overt act in furtherance of the goal.  <u>Middleton v. The City of New York</u>, 2006 WL 1720400 (E.D.N.Y.)   Plaintiffs are not required to list the place and the date of Defendants' meetings and the summary of their conversations when they plead conspiracy, but the pleadings must present facts tending to show agreement and concerted action. <u>Fisk v. Letterman</u>, 401 F. Supp. 2d 362, 376 (S.D.N.Y. 2005) *citing* <u>Hoffman v. Halden</u>, 268 F.2d 280, 294-95 (9th Cir.1959).  Plaintiffs' FAC meets the three prong test as it alleges an agreement between Defendants, acts used by the Defendants to deprive the Plaintiffs of their constitutional rights, and several overt acts in furtherance of the goal.  <u>Middleton v. The City of New York</u>, 2006 WL 1720400 (E.D.N.Y.).

The agreement to deprive individuals of their rights included, but was not limited to, the mass arrests of those in the vicinity of protests and the arrests of those who were peacefully observing protests, the removal of protestors out of the visibility of the press, the containment of protestors, and falsely arresting large groups of people without probable cause and then either

13

falsely prosecuting these individuals on trumped up charges or releasing them with no charges after extended detention. (*See* Plaintiffs' FAC ¶¶251, 430-433, 513-514, 672-674 and 866-879). Furthermore, Plaintiffs specifically allege that "[a]n agreement was formed between the state actors MTA and its police commissioner . . . to violate the Constitutional rights of OWS participants in their jurisdictions. The MTA Commissioner was a high-ranking 26-year veteran of the NYPD when he left to become MTA Commissioner. The MTA Commissioner served for approximately five years with NYPD's Public Information Division as its highest ranking officer. The Public Information Division has responsibility for handling the press. Given this history, the MTA Commissioner would have had every opportunity to coordinate with NYPD in its response to OWS generally and handling the press specifically in connection with OWS. In each case, the conspiring entities or individuals acted in concert and committed overt acts to cause violations of the Constitutional rights of Plaintiffs and many other OWS participants." (*See* Plaintiffs' FAC ¶¶ 404 – 406).

The fact that the violations of Justin Sullivan's constitutional rights by the MTA Defendants occurred during the same time and in the same manner as the various other violations conducted by other state actors described in the Plaintiffs FAC furthers the Plaintiffs' showing that the pleadings tend to show an agreement and concerted action, as required to plead a conspiracy. Furthermore, both the MTA Defendants and members of the NYPD were present at the scenes of Justin Sullivan's arrests and were actively involved in the violation of Justin Sullivan's constitutional rights, in concert with each other. (*See* Plaintiffs' FAC, ¶¶ 162-172, 866-870, 881, 890-893).

### b.   Conspiracies are secretive and may be proven by circumstantial evidence

Defendants' motion must also be denied as conspiracies are by their very nature secretive, can rarely be proven by direct evidence, and often must be proven by circumstantial evidence.   Brewster v. Nassau County 349 F. Supp.2d 540 (E.D.N.Y. 2004); Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999); Rounseville v. Zahl, 13 F. 3d 625, 632 (2d Cir. 1994), *see, e.g.,* United States v. Rivera, 971 F.2d 876, 890 (2d Cir.1992); United States v. Pitre, 960 F.2d 1112, 1121 (2d Cir.1992).   In asserting a §1983 claim, a Plaintiff is not required to list the place and the date of Defendants' meetings and the summary of their conversations when he pleads conspiracy, but the pleadings must present facts tending to show agreement and concerted action. (*quoting* Fisk v. Letterman, 401 F. Supp. 2d 362, 376 (S.D.N.Y. 2005). Middleton v. The City of New York, 2006 WL 1720400 (E.D.N.Y.).

Pleadings which have some allegations "upon information and belief," such as in General Electric Co., as well as the instant matter, will survive a motion to dismiss.   General Electric Co. v. Bucyrus-Erie Company, 563 F. Supp. 970 (1983).   In General Electric Co., the court approved of the plaintiff's explanation for the need to plead certain allegations upon information and belief.   The court said that proof of illegal conspiracy is ordinarily not readily available in public documents, or admitted at meetings where adverse interests are also represented. Id at 975. Even at the trial stage, the court noted, proof of conspiracy often requires the drawing of inferences.   Id.   Accordingly, the court held that they "do not think it unreasonable that allegations in a complaint would rest upon [inferences]." Id at 975.

Further, the Court noted in General Electric Co. that discovery may well be needed to unearth proof of an illegal conspiracy.   Id.   As such, Plaintiffs' respectfully request limited discovery as to communications between the MTA Defendants and other state actors relating to

OWS prior to decision on the MTA Defendants' motion, or the motion should be dismissed outright.  (*See* Declaration of Yetta G. Kurland, Ex. A, Plaintiffs' proposed limited discovery requests).

Lastly, Plaintiffs' allegations of conspiracy by multiple Defendants to have the Plaintiffs arrested, and maliciously prosecuted, of which some are based upon information belief, are enough to survive a motion to dismiss.  Fincher v. County of Westchester 979 F.Supp. 989 (S.D.N.Y.1997).  In Fincher, the Plaintiff merely alleged a conspiracy based "upon information and belief" due to a friendship relationship among the defendant "and/or some other unknown" relationship.  Id.  Plaintiffs here have made a much more detailed showing in their allegations of conspiracy in this matter, and as such the MTA Defendants' motion to dismiss must be denied.

## 6. **Plaintiffs Have Pled a Valid Claim Against the MTA Based on Respondeat Superior**

Defendants' liability based on respondeat superior is not based on their commission of Constitutional torts, but for the intentional torts committed by its officers in the performance of their official duties. Jones v. State, 33 N.Y.2d 275, 283-84 (1973) (reinstating Court of Claims' finding that State was not immune from liability stemming from alleged assault and battery); *see also* Shirvanion v. State, 883 N.Y.S.2d 639, 640 (3d Dept. 2009).  As such, the MTA Defendants' Motion to Dismiss must be denied.

## II. DEFENDANTS' REQUEST FOR SEVERANCE MUST BE DENIED

The question of whether the severance of claims is appropriate is a factual analysis intended to promote practicality and common sense and the inquiry into "whether to sever a claim is left to the discretion of the trial court." Kehr ex rel. Kehr v. Yamaha Motor Corp., U.S.A., 596 F.Supp.2d 821, 826 (S.D.N.Y. 2008) (denying defendant's motion to sever the claims of two plaintiffs who were each injured in a separate ATV rollover); *see also* New York v. Hendrickson

Bros., Inc., 840 F.2d 1065, 1082 (2d Cir.1988).  Furthermore, "Federal courts view severance as a procedural device to be employed only in exceptional circumstances."  Laureano v. Goord, 2007 WL 2826649, at *8 (S.D.N.Y. Aug. 31, 2007) (denying defendants' motion to sever the claims of plaintiffs who brought claims against officers of the New York State Department of Correctional Services based on allegations involving the suicides of two prisoners).  As such, "the impulse is toward the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged."  United Mine Workers of America v. Gibbs, 383 U.S. 715, 724 (1966).

Plaintiffs argue that severance of their claims against the MTA Defendants would not be productive and would actually work to further inconvenience all parties as well as the courts, which would then be burdened with multiple actions.  It would also cause prejudice to the Plaintiffs, be more costly and potentially lead to inconsistent judgments.  While the massive nature of Defendants' misconduct has created multiple claims that may be, superficially, factually dissimilar, Plaintiffs allege in the FAC that these claims are indeed related and warrant a single hearing by this Court.  Severance would eliminate from this matter the consideration of the widespread nature of Defendants' misconduct and the full extent of the conspiracy discussed above. The MTA Defendants' motion is a red herring meant to persuade the Court that these are coincidental unrelated incidents, while in fact it is part of a much larger and coordinated effort to suppress constitutional rights.

Moreover, while it would in no way prejudice the MTA Defendants to litigate this matter as pled, Plaintiffs would be greatly prejudiced if the matter were severed as it would seriously compromise their ability to present their case.  Furthermore, a balancing of the factors relevant to severance as laid out in Lutz v. Buono, 2009 WL 3364032 (S.D.N.Y. 2009) weigh heavily against

17

severance in this matter, as they did in <u>Lutz</u>.  These factors include whether: (1) the claims arise out of the same series of transactions and occurrences, (2) present common questions of fact and law, (3) involve different witnesses or evidence, (4) promote judicial economy, and (5) whether joinder would "avoid the potential problem of inconsistent verdicts."  <u>Lutz v. Buono</u>, 2009 WL 3364032, at *1 (S.D.N.Y. 2009).

1. **Plaintiffs' claims arise out of the same series of transactions and occurrences**

Plaintiffs' claims stem from the same series of transactions and occurrences, including but not limited to Defendants' pattern and practice of misconduct in its response to and handling of the OWS movement.  The phrase "transaction or occurrence" has been loosely defined by courts to encourage "logically related claims" by or against different parties to be included in one single action. <u>Martinez v. Robinson</u>, 2001 WL 498407, at *5 (S.D.N.Y. 2001), <u>citing</u> <u>Blesedell v. Mobil Oil Co.</u>, 708 F.Supp. 1408, 1421 (S.D.N.Y.1989).  Plaintiffs claims arise out of the same series of transactions and occurrences because, as Plaintiffs allege in their Amended Complaint; indeed, they all have to do with how the City of New York, through its various agencies and partners, responded to a single movement at various times.

2. **Plaintiffs' claims present common questions of fact and law**

Plaintiffs' claims also involve common questions of both fact and law. The MTA Defendants attempt to downplay the issue of commonality by claiming that Justin Sullivan's arrest was an isolated incident and unrelated to the City's reaction to other OWS actions. While it is true that of the many Plaintiffs in this matter, Justin Sullivan was the only one arrested at Grand Central Station, this slight difference in his experiences does not negate the appropriateness of joinder of their claims against Defendant.  <u>See</u> <u>Laureano v. Goord</u>, 2007 WL 2826649, at *9 (S.D.N.Y. Aug. 31, 2007).  Moreover, the same facts have been alleged regarding the Plaintiffs' conspiracy

claims. Indeed Defendants appear to have ignored or overlooked the fact that Commissioner Coan is implicated in Plaintiffs' conspiracy claims at all.  Furthermore, the same questions of law apply regarding Defendants' liability to Plaintiffs for Defendants' acts and/or omissions and Defendants' misconduct, including but not limited to 42 USC § 1983, the First, Fourth, and Fourteenth Amendments to the United States Constitution, and the laws and Constitution of the State of New York and rules and regulations of the City of New York.  Id.

**3.   Plaintiffs' claims will involve the same witnesses and evidence**

The investigation of Plaintiffs' claims will require the examination of many of the same witnesses and evidence.  Testimony from all the Defendants is necessary to investigate the claims of all Plaintiffs, in particular in regard to Plaintiffs' conspiracy claims.  Therefore, even though there will be certain costs involved in the collection of evidence and examination of witnesses in this matter, it will be far less than the cost of proceeding with multiple actions.  Plaintiffs gave significant thought to keeping the complaint and costs associated as minimal as possible without compromising the claims brought by Plaintiffs.  All Plaintiffs must collect evidence regarding the various violations, abuses and collusions alleged in the FAC.  These factors further support the need for the joinder of Plaintiffs' claims, rather than severance.  See Laureano v. Goord, 2007 WL 2826649, at *9 (S.D.N.Y. Aug. 31, 2007).

**4.   Joinder of Plaintiffs' claims promotes judicial economy and avoids inconsistent judgments**

Proceeding with Plaintiffs' claims as one action will promote judicial economy and prevent the potential problem of inconsistent judgments.  Plaintiffs' claims are based on the acts and/or omissions of Defendants and proceeding against Defendants together in one action avoids the waste of judicial resources that would result from forcing multiple cases considering the same widespread misconduct at the same time.  Especially at this early stage in litigation, where

19

discovery has not yet begun and any discovery regarding the MTA Defendants would have to be duplicated if the matters were severed, joinder promotes judicial economy and the convenience of all parties.  *See* <u>Laureano v. Goord</u>, 2007 WL 2826649, at *9 (S.D.N.Y. Aug. 31, 2007). Furthermore, proceeding as one action will avoid the issue of inconsistent judgments and the unnecessary duplication in adjudication of the matter.

For these reasons, Plaintiffs oppose the severance of their claims.  The MTA Defendants have failed to meet their burden to justify the severance of Plaintiffs' claims and its motion should therefore be denied.

## **CONCLUSION**

In conclusion, Plaintiffs respectfully request that this Court deny the instant motion outright as the MTA Defendants have failed to meet their burden of proof to sustain a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6).

DATED:   New York, New York
         January 23, 2013


                            Respectfully submitted,

                            The Kurland Group


                            _____~//s//~_____
                            Yetta G. Kurland, Esq. (YK-1251)
                            *Attorneys for Plaintiffs*
                            350 Broadway, Suite 701
                            New York, NY 10013
                            (212) 253-6911
                            Fax: (212) 614-2532
                            kurland@kurlandassociates.com

20