UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- x
:
NEW YORK CITY COUNCIL MEMBER YDANIS  :
RODRIGUEZ, et al.,                   :
                                     :
          Plaintiffs,                :      12 Civ. 3389 (NRB) (RLE)
                                     :
     - against -                     :
                                     :
DEPUTY INSPECTOR EDWARD WINSKI, et al., :
                                     :
          Defendants.                :
                                     :
------------------------------------- x

**REPLY MEMORANDUM OF LAW OF DEFENDANT JP MORGAN
CHASE & CO. IN SUPPORT OF ITS MOTION TO DISMISS**

Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, NY 10036
(212) 715-9100

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT .......................................................................................... 1

ARGUMENT ........................................................................................................................ 1

DENIAL OF ACCESS TO THE OUTDOOR PLAZA AT 1CMP DOES NOT VIOLATE
PLAINTIFFS' FIRST AMENDMENT RIGHTS ................................................................. 1

    A.    There Is No Legal Obligation to Keep the Plaza Open to the Public .................... 1

    B.    Plaintiffs' Efforts to Avoid JPMC's Right to Exclude by Implying a Public
        Character Are Without Merit .................................................................................. 5

CONCLUSION ................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Angiolillo v. Town of Greenburgh,*
290 A.D.2d 1 (2d Dep't 2001)..................................................................................................9

*Brown v. State of New York,*
89 N.Y.2d 172 (1996)............................................................................................................10

*Cornelius v. NAACP Legal Defense & Educ. Fund,*
473 U.S. 788 (1985).................................................................................................................7

*Ellington Constr. Corp. v. Zoning Board of Appeals of Inc. Village of New Hempstead,*
152 A.D.2d 365 (2d Dep't 1989), *aff'd*, 77 N.Y.2d 114 (1990)..............................................9

*Evans v. Newton,*
382 U.S. 296 (1966)............................................................................................................6, 8

*First Unitarian Church v. Salt Lake City Corp.,*
308 F.3d 1114 (10th Cir. 2002)...............................................................................................6

*Flagg Brothers, Inc. v. Brooks,*
436 U.S. 149 (1978).................................................................................................................8

*Freedom From Religion Foundation v. City of Marshfield,*
203 F.3d 487 (7th Cir. 2000) ...............................................................................................6, 8

*Friends of Van Cortlandt Park v. City of New York,*
95 N.Y.2d 623 (2001) .............................................................................................................9

*Gewirtz v. City of Long Beach,*
69 Misc.2d 763 (Sup. Ct. Nassau Co. 1972), *aff'd*, 45 A.D.2d 841 (2d Dep't 1974)................9

*Int'l Society for Krishna Consciousness, Inc. v. Lee,*
505 U.S. 672 (1992) ................................................................................................................8

*Int'l Society for Krishna Consciousness, Inc. v. Reber,*
454 F. Supp. 1385 (C.D. Cal. 1978) ........................................................................................7

*Jackson v. City of Markham,*
773 F. Supp. 105 (N.D. Ill. 1991)............................................................................................6

*Lazore v. Board of Trustees of Village of Massena,*
191 A.D.2d 764 (3d Dep't 1993).............................................................................................9

*Lewis v. McCracken,*
782 F.Supp.2d 702 (S.D. Ind. 2011)........................................................................................7

*Lloyd Corp. v. Tanner*,
    407 U.S. 551 (1972)......................................................................................................9

*Missere v. Gross*,
    826 F.Supp.2d 542 (S.D.N.Y. 2011)..............................................................................2

*Pani v. Empire Blue Cross Blue Shield*,
    152 F.3d 67 (2d Cir. 1998).............................................................................................2

*People ex rel. Arcara v. Cloud Books, Inc.*,
    68 N.Y.2d 553 (1986)..................................................................................................10

*Powell v. City of New York*,
    85 A.D.3d 429 (1st Dep't), *app. denied*, 17 N.Y.3d 715 (2011)....................................9

*Riverview Partners L.P. v. City of Peekskill*,
    273 A.D.2d 455 (2d Dep't 2000)....................................................................................9

*SHAD Alliance v. Smith Haven Mall*,
    66 N.Y.2d 496 (1985)..................................................................................................10

*Spencer v. Connolly*,
    25 A.D.3d 832 (3d Dep't 2006)......................................................................................5

*Thomason v. Jernigan*,
    770 F. Supp. 1195 (E.D. Mich. 1991)............................................................................6

*United Church of Christ v. Gateway Econ. Dev. Corp.*,
    383 F.3d 449 (6th Cir. 2004).........................................................................................7

*Village of Croton-on-Hudson v. County of Westchester*,
    38 A.D.2d 979, *aff'd*, 30 N.Y.2d 959 (1972).................................................................9

*Willow Tex, Inc. v. Dimacopoulos*,
    68 N.Y.2d 963 (1986)....................................................................................................4

*Winston v. Village of Scarsdale*,
    170 A.D.2d 672 (2d Dep't 1991)....................................................................................9

*World Wide Street Preachers' Fellowship v. Reed*,
    2006 WL 1984614 (M.D. Pa. July 13, 2006).................................................................7

*Zalaski v. City of Hartford*,
    838 F.Supp.2d 13 (D. Conn. 2012)............................................................................6, 8

**Rules**

Rule 12(b)(6), Fed.R.Civ.P........................................................................................................2

**Other Authorities**

*American Heritage Dictionary of the English Language* (Houghton Mifflin 1976) ....................... 3

*Dictionary of American English on Historical Principles* (U. of Chicago Press 1951) ................. 3

*Dictionary of Architecture and Construction* (McGraw-Hill 1975) ............................................... 3

Judith S. Kaye, *Dual Constitutionalism in Practice and Principle*, 61 St. John's L. Rev. 399 (1987) ............................................................................................................................. 10

*Oxford English Dictionary*, www.oed.com .................................................................................... 3

Voorhees, Walker, Smith & Smith, *Zoning New York City: A Proposal for a Zoning Resolution for the City of New York* (1958) ................................................................................ 2

*Webster's Third New International Dictionary of the English Language Unabridged* ................. 3

## PRELIMINARY STATEMENT

New York City is obligated to allow expressive conduct on public sidewalks and in public parks, subject to reasonable, content-neutral time, place and manner restrictions. JPMC is a private actor and has no such obligation. JPMC showed in its prior memorandum that: (1) it has no legal obligation to keep the plaza at 1CMP open to the public; (2) it may exclude persons from the plaza (and may receive police assistance); (3) its opening of the plaza to the public does not obligate it to allow political speech or other conduct protected by the First Amendment; and (4) plaintiffs' conclusory allegations that JPMC has allowed expressive conduct by others do not support their claims. Plaintiffs' responses are devoid of merit, consist largely of irrelevancies, and only demonstrate that JPMC's motion should be granted.[1]

## ARGUMENT

### DENIAL OF ACCESS TO THE OUTDOOR PLAZA AT 1CMP DOES NOT VIOLATE PLAINTIFFS' FIRST AMENDMENT RIGHTS

**A.   There Is No Legal Obligation to Keep the Plaza Open to the Public**

Plaintiffs acknowledge that "1CMP was not constructed under the provisions of the 1961 Zoning resolution" (Pl. Mem. at 4). They thus concede that the plaza is not subject to the statutory requirement that plazas built under the 1961 Zoning Resolution in exchange for bonus floor area be kept open to the public.[2] Instead, plaintiffs assert that the October 5, 1956

---

[1] This reply memorandum does not respond to every assertion in plaintiffs' opposition papers, but the lack of a response to any assertion is not a concession that it is correct or relevant. The abbreviations and references in this reply memorandum are those in JPMC's moving memorandum (cited herein as "JPMC Mem."). Citations to "Pl. Mem." refer to plaintiffs' memorandum in opposition to JPMC's motion; citations to "Glickman Decl." refer to the declaration of Leo Glickman in opposition; and citations to "Braun Reply Decl." refer to the reply declaration of Jeffrey L. Braun, submitted by JPMC.

[2] JPMC previously pointed out (Mem. at 2) that, in its answer to the initial complaint, the City affirmed that 1CMP "is a pre-1961 space that *is not required by law to be open to the public* (¶¶ 193, 194, 195)" (emphasis added). The City's answer to the amended complaint, which was filed after JPMC's motion papers, reiterates this averment (*see* ¶¶ 272, 273, 568).

agreement between Chase Bank and the City (Sillerman Decl. Exh. 14), which obligated the bank to build a "plaza," necessarily obligated the bank (and its successors) to keep this plaza open to the public because, supposedly, the "plain dictionary meaning" of "plaza" as of 1956 was "a *public square*" (Pl. Mem. at 4) (emphasis in original).[3]

The word "plaza" has not had the singular meaning ascribed to it by plaintiffs. Plaintiffs' support for their ostensible plain meaning of "plaza" consists of one incomplete dictionary definition (Pl. Mem. at 3), and a deceptive reference to the 1958 Voorhees Report (*id.* at 5). The complete dictionary definition from which plaintiffs quote selectively actually defines a "plaza" as "a public square *or market place* in a city or town" (*see* Glickman Decl. Exh. A) (emphasis added). Under this definition, a "plaza" is not necessarily limited to "a public square" as plaintiffs contend, but also could be a "market place." Furthermore, plaintiffs mischaracterize the definition of "plaza" in the Voorhees Report, and try to hide their dissembling with a misleading citation. Specifically, plaintiffs assert that the Voorhees Report "defines the term 'plaza' as 'an open area accessible to the public'" (Pl. Mem. at 5), citing Exhibit 6 to the Sillerman declaration, which is an excerpt from the Voorhees Report. However, this excerpt does not contain this purported definition. Instead, the actual definition of "plaza" in the Voorhees Report (*see* Braun Reply Decl. Exh. A, at 34), which plaintiffs do not provide, is a proposed definition for inclusion in a new zoning ordinance, and it includes several elements and

---

[3] Plaintiffs object to JPMC's reliance on the Sillerman declaration (Pl. Mem. at 4). The declaration annexes and explains documents that are public records, and "[i]t is well-established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6)." *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998). The courts regularly consider public records of local governments on motions to dismiss. *See, e.g., Missere v. Gross*, 826 F.Supp.2d 542, 553 (S.D.N.Y. 2011) (collecting cases). Here, there is no dispute as to the authenticity of these documents. Plaintiffs' proposed discovery (*see* Glickman Decl. Exh. I) relates only to JPMC's contact with law enforcement agencies since August 2011 and has nothing to do with the matters addressed by the Sillerman declaration.

requirements other than accessibility to the public. This definition was not a general definition of the word "plaza" as plaintiffs insinuate, but a proposed statutory definition that was drafted to establish several technical prerequisites (*i.e.*, not just public access, but also specified dimensions and elevations) with which a qualifying "plaza" would be required to comply in order to entitle its developer to receive the benefit of a floor area bonus allowing construction of a larger building.

Furthermore, dictionaries other than the one cherry-picked (and incompletely quoted) by plaintiffs confirm that "plaza" is not limited to the definition relied upon by plaintiffs, but has multiple meanings that include market places and urban open areas generally (*see* Braun Reply Decl. Exh. B). For example, *Webster's Third New International Dictionary of the English Language Unabridged* defines "plaza" as including "a public square in a city or town," or "an open square," or a "marketplace" (Merriam 1965, at 1738). *See also, e.g.*, 3 *A Dictionary of American English on Historical Principles* 1263 (U. of Chicago Press 1951) ("[a] public square or market place" or "an open place connected with a fort, mine, etc."); *The American Heritage Dictionary of the English Language* 1005 (Houghton Mifflin 1976) ("[a] public square or similar open area in a town or city"); *Dictionary of Architecture and Construction* 369 (McGraw-Hill 1975) ("[a]n open place in a town" or "public square"). The *Oxford English Dictionary*, available on-line and self-described as "[t]he definitive record of the English language," defines "plaza," as used in North America, as "[a] large paved area surrounded by or adjacent to shops and businesses, usually designed as a feature of a shopping complex," or "a shopping centre" – a usage that is consistent with the common practice of naming shopping malls "plazas," such as, for example, the Garden State Plaza in nearby Paramus, New Jersey, which opened in 1957.

3

Plaintiffs tie their misleading characterizations of the definition of "plaza" to an assertion that the importance of contract language "is heightened in the context of real estate transactions, where '... certainty is a paramount concern, and where the instrument was negotiated between sophisticated, counseled business people negotiating at arm's length'" (Pl. Mem. at 3) (quoting *Vermont Teddy Bear Co. v. 538 Madison Realty Co.*, 1 N.Y.3d 470, 475 (2004)). JPMC agrees with this statement of contract law, which, however, supports JPMC's position, not plaintiffs' position. While plaintiffs essentially claim that the 1956 agreement gave the public a permanent right, in the nature of an easement, to use the plaza at 1CMP, New York law requires that a contract or instrument that creates an easement be much more clear and explicit than the 1956 agreement and the deeds that implemented it. In *Willow Tex, Inc. v. Dimacopoulos*, 68 N.Y.2d 963 (1986), the New York Court of Appeals stated:

> To create an easement by express grant there must be a writing containing plain and direct language evincing the grantor's intent to create a right in the nature of an easement rather than a revocable license. The writing must establish unequivocally the grantor's intent to give *for all time to come* a use of the servient estate to the dominant estate. The policy of the law favoring unrestricted use of realty requires that where there is any ambiguity as to the permanence of the restriction to be imposed on the servient estate, the right of use should be deemed a license, revocable at will by the grantor, rather than an easement.

*Id.* at 965 (emphasis in original) (citations omitted).

The 1956 agreement obligated the bank to build a "plaza," and established physical characteristics to which this plaza must adhere. However, neither the agreement nor the ensuing deeds said anything about public access to the plaza. The word "plaza" did not have so clear and definitive a meaning that the mere use of the word, without more, was sufficiently explicit to create an irrevocable dedication or easement of access in favor of the public.

Furthermore, the 1956 agreement specifically obligated the bank to "grant to the

4

City a permanent and perpetual easement for pedestrian traffic" (Sillerman Decl. Exh. 14, at ¶ 6), and also "a permanent and perpetual easement for street purposes" (*id.* at ¶ 7), around the perimeter of the site. The inclusion of these provisions in the agreement and the omission of comparable language about the plaza demonstrates that the agreement and the deeds implementing it did <u>not</u> create any right in the City for perpetual public use of the plaza itself. *See Spencer v. Connolly*, 25 A.D.3d 832, 834 (3d Dep't 2006) (finding it "untenable" that a deed that expressly established an easement going to the north of property also was intended to establish a separate easement to the south without clear language to that effect, and citing 5 Warren's Weed, *New York Real Property*, Easements § 40.17 [5th ed.], for the principle that "[w]ords creating an easement should be certain in their effect").[4]

### B.  Plaintiffs' Efforts to Avoid JPMC's Right to Exclude by Implying a Public Character Are Without Merit

It follows from the foregoing that JPMC may exclude persons from the plaza and obtain police assistance in doing so, even though JPMC has allowed the public into the plaza, and even if (as plaintiffs claim) JPMC has allowed some expressive conduct (*see* JPMC Mem. at 17-25). There is no merit to plaintiffs' contentions to the contrary.

1.  According to plaintiffs, "[c]ourts have frequently held that locations on private property must be considered public fora for Constitutional Purposes" (Pl. Mem. at 8). However, the cases relied upon by plaintiffs are factually dissimilar from the present case and do not support plaintiffs' position. In fact, JPMC previously identified three of plaintiffs' cases –

---

[4] Similarly, the reference in a recital in the BSA's June 12, 1956 resolution granting a zoning variance to "room for relaxation for the applicant's employees and for others in the area" (Sillerman Decl. Exh. 18, at 1008) is too vague to create a legal obligation to keep the plaza perpetually open to the public, particularly where, as here, the resolution expressly imposed on the grant of the variance numerous conditions unrelated to public access (*id.* at 1009). Nor can legal significance be given to hearsay accounts (Glickman Decl. Exhs. F, G) of oral statements attributed to the late David Rockefeller in the 1970s to the effect that the Dubuffet sculpture installed in the plaza in 1972 was for "the downtown community."

*i.e.*, the cases involving Lincoln Center, Boston's Faneuil Hall and a Las Vegas hotel – as factually distinguishable due to the continuing ownership and control retained by the government over the ostensibly private property at issue (*see* JPMC Mem. at 22 n. 7).

Plaintiffs' other cases are equally inapposite. For example, in *Zalaski v. City of Hartford*, 838 F.Supp.2d 13 (D. Conn. 2012), touted by plaintiffs as a "perfect" match with this case (*see* Pl. Mem. at 15), the city continued to own Riverfront Plaza but leased it to a non-profit entity whose "mission" was "to further the use and enjoyment of the space by the public," and the lease expressly required that residents enjoy "the same access to Riverfront Park as such residents had before this Agreement was executed." *Id.* at 32-33. Other cases relied upon by plaintiffs are distinguishable for the same reason of continuing governmental ownership or control. *See First Unitarian Church v. Salt Lake City Corp.*, 308 F.3d 1114 (10th Cir. 2002) (public street was conveyed to the Mormon Church, but subject to an easement preserving public pedestrian use); *Freedom From Religion Foundation v. City of Marshfield*, 203 F.3d 487 (7th Cir. 2000) (plot containing a religious statue was carved out from a public park and sold to a private entity, but subject to a covenant requiring that it be dedicated to public use); *Jackson v. City of Markham*, 773 F. Supp. 105 (N.D. Ill. 1991) (privately-built sidewalk was within the highway right-of-way and was maintained by the Illinois Department of Transportation); *Thomason v. Jernigan*, 770 F. Supp. 1195 (E.D. Mich. 1991) (cul-de-sac on property owned by Planned Parenthood was subject to an easement for "road right-of-way," which was cancelled by the city after anti-abortion demonstrations); *cf. Evans v. Newton*, 382 U.S. 296 (1966) (park that was maintained by the city for many years as a public park did not lose its public character when

the city refused to continue racial segregation and was replaced with private trustees).[5]

2.    Other cases relied upon by plaintiffs involved privately owned sidewalks that were indistinguishable in appearance from adjoining public sidewalks, functioned as a public thoroughfare and an integral part of the street grid, or both. *See United Church of Christ v. Gateway Econ. Dev. Corp.*, 383 F.3d 449 (6th Cir. 2004); *Lewis v. McCracken*, 782 F.Supp.2d 702 (S.D. Ind. 2011); *World Wide Street Preachers' Fellowship v. Reed*, 2006 WL 1984614 (M.D. Pa. July 13, 2006). *But compare Int'l Society for Krishna Consciousness, Inc. v. Reber*, 454 F. Supp. 1385 (C.D. Cal. 1978), previously cited by JPMC (Mem. at 21).

In reliance on these cases, plaintiffs emphasize that the 1CMP site includes land that formerly was publicly owned as part of Cedar Street (Pl. Mem. at 8-10).[6] Plaintiffs further assert that a "walkway extending through 1CMP and connecting the [remaining] segments of the Cedar Street sidewalk is unimpeded and contiguous" (*id.* at 10-11) so that, supposedly, the plaza at 1CMP effectively remains part of the City's street grid. These assertions do not support plaintiffs' position. The closing, de-mapping and conveyance to the bank of part of Cedar Street was not a stratagem to eliminate its public nature, and the City did not retain ownership of, any easement over or any other interest in the conveyed property. Instead, the conveyance to the bank was part of a *bona fide* swap pursuant to which, in exchange for the conveyance to the bank of the closed and de-mapped street, the bank conveyed to the City permanent easements over the perimeter of the site for public streets and sidewalks. As has been observed, "the government

---

[5]    Plaintiffs also cite *Cornelius v. NAACP Legal Defense & Educ. Fund*, 473 U.S. 788 (1985) (*see* Pl. Mem. at 2, 8), for the Court's statement that "a speaker must seek access to public property *or to private property dedicated to public use*" to raise First Amendment issues. *Id.* at 801 (emphasis added). The case involved access to a program for soliciting charitable contributions from federal employees, and access to private property was not at issue in the case.

[6]    Plaintiffs' caption asserts – inaccurately – that "1CMP was Previously Public Property" (Pl. Mem. at 9). Only the portion of 1CMP that was part of Cedar Street was public property.

7

always retains authority to close a public forum, by selling the property, changing its physical character, or changing its principal use," because "[o]therwise the State would be prohibited from closing a park, or eliminating a street or sidewalk, which no one has understood the public forum doctrine to require." *Int'l Society for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 699-700 (1992) (Kennedy, J., concurring).

Plaintiffs' portrayal of the plaza at 1CMP as part of the street grid is also unavailing. As the photographs in the Landmarks Preservation Commission's designation report show (*see* Sillerman Decl. Exh. 1), the plaza actually is at an elevation substantially higher than the surrounding public sidewalks and is accessible from the sidewalks only by stairways that climb up to the plaza. There is thus a clear visual and physical delineation between the plaza and the site's surrounding sidewalks. These sidewalks are public property, and JPMC does not claim a right to exclude persons from them. The plaza, by contrast, is not public.

3. Plaintiffs also assert, without elaboration, that the plaza "has all the characteristics of a park" and, as such, "is a traditional public forum" (Pl. Mem. at 15). This claim is equally misplaced, because the plaza at 1CMP is not a public park. The Supreme Court has expressed "doubt" that "the operation of a park for recreational purposes is an exclusively public function." *Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 159 n. 8 (1978). The cases relied upon by plaintiffs in which privately operated parks were held to be public in nature all involved parks that had been publicly owned but then were transferred to private ownership, subject to express requirements of continued public access. *See Evans*, 382 U.S. at 298; *Freedom From Religion Foundation*, 203 F.3d at 490; *Zalaski*, 838 F.Supp.2d at 24.[7]

---

[7]     New York cases address the dedication of a park in the context of the public trust doctrine, which holds that land that has been dedicated as a public park may not be put to another

8

4. On the basis of an "exhaustive search" (Pl. Mem. at 6), plaintiffs have discovered <u>two</u> incidents, over a period of 60 years, to add to the complaint's reference (¶ 276) to a single demonstration in 2009 (which concededly was broken up by the police) to support their claim that JPMC has selectively allowed expressive conduct in the plaza. However, one of these incidents, which occurred in March 1965, ended with 49 arrests (*see* Pl. Mem. at 7), and was preceded by an injunction, which was obtained by the bank after a hearing in State Supreme Court, against any demonstration "in the bank building and *the adjacent plaza*" (*see* Braun Reply Decl. Exh. C) (emphasis added). Newspaper accounts of the other incident, which occurred in December 1966, report that it occurred "at" or "in front of" 1CMP, but do not specify that it occurred in the plaza (*see* Glickman Decl. Exh. C). In fact, a January 1967 report by demonstration organizers confirms that the bank had objected to use of the plaza, and that the organizers agreed to confine the demonstration to the sidewalk and not hold it "on private property" (*see* Braun Reply Decl. Exh. D).[8]

---

use without legislative approval. *See Friends of Van Cortlandt Park v. City of New York*, 95 N.Y.2d 623 (2001). However, the dedication of land for use as a public park requires "an unequivocal express or implied offer by the owner and, where required, an express or implied acceptance by the public ...." *Angiolillo v. Town of Greenburgh*, 290 A.D.2d 1, 10-11 (2d Dep't 2001). While the issue of "whether a parcel has become a park by implication is a question of fact" (*id.* at 11), the dedication of privately owned land as a park has required the conveyance of ownership to a governmental entity. *See, e.g., Ellington Constr. Corp. v. Zoning Board of Appeals of Inc. Village of New Hempstead*, 152 A.D.2d 365 (2d Dep't 1989), *aff'd*, 77 N.Y.2d 114 (1990); *Village of Croton-on-Hudson v. County of Westchester*, 38 A.D.2d 979 (2d Dep't), *aff'd*, 30 N.Y.2d 959 (1972); *Riverview Partners L.P. v. City of Peekskill*, 273 A.D.2d 455 (2d Dep't 2000); *Gewirtz v. City of Long Beach*, 69 Misc.2d 763 (Sup. Ct. Nassau Co. 1972), *aff'd*, 45 A.D.2d 841 (2d Dep't 1974). Furthermore, even public ownership is not enough to establish dedication as a park. *See, e.g., Powell v. City of New York*, 85 A.D.3d 429 (1st Dep't), *app. denied*, 17 N.Y.3d 715 (2011); *Angiolillo*, 290 A.D.2d at 11-12; *Lazore v. Board of Trustees of Village of Massena*, 191 A.D.2d 764 (3d Dep't 1993); *Winston v. Village of Scarsdale*, 170 A.D.2d 672 (2d Dep't 1991).

[8] Plaintiffs also cite a 1968 show promoting the bank's agricultural lending business (*see* Glickman Decl. Exh. E). This promotional activity was not political speech and did not constitute an "open-ended invitation to the public" to engage in expressive conduct. *See Lloyd Corp. v. Tanner*, 407 U.S. 551, 565 (1972).

9

5.  Plaintiffs also assert that Article I, § 8, of New York State's constitution is more protective of free speech than the First Amendment (Pl. Mem. at 20-21) – an implicit assertion that the complaint's ninth "cause of action" (¶¶ 591-95), premised on state law, is directed at JPMC. However, while the State's constitution is more protective of freedom of expression than the First Amendment in some respects (*see, e.g., People ex rel. Arcara v. Cloud Books, Inc.*, 68 N.Y.2d 553, 557-58 (1986)), it is not more protective than the federal constitution in all respects, and each issue must be considered separately on its own merits. Judith S. Kaye, *Dual Constitutionalism in Practice and Principle*, 61 St. John's L. Rev. 399, 412 (1987).

The New York Court of Appeals has specifically held that the State's constitution does <u>not</u> recognize rights greater than those protected by the First Amendment to engage in expressive conduct on someone else's private property. *SHAD Alliance v. Smith Haven Mall*, 66 N.Y.2d 496, 506-07 (1985). The decision in *SHAD Alliance* bars plaintiffs' state law claim.[9]

## CONCLUSION

The complaint does not state a viable claim for relief against JPMC. Therefore, this action should be dismissed in its entirety, with prejudice, as to JPMC.

Dated: New York, NY  
       February 12, 2013

KRAMER LEVIN NAFTALIS & FRANKEL LLP  
*Attorneys for Defendant JP Morgan Chase & Co.*

By:     /s/ Jeffrey L. Braun  
      Jeffrey L. Braun  
      Samantha Ford

1177 Avenue of the Americas  
New York, NY 10036  
(212) 715-9100

---

[9] The complaint's reference to "common law" (*see* ¶ 594) may refer to a cause of action for violation of state constitutional rights (*see Brown v. State of New York*, 89 N.Y.2d 172 (1996)). Here, however, there has been no such violation.