UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NEW YORK CITY COUNCIL MEMBER )
YDANIS RODRIGUEZ, et al., )
) Civ. No.: 12 CIV 3389 (NRB) (RLE)
Plaintiffs, )
) **ORAL ARGUMENT REQUESTED**
-against- )
)
DEPUTY INSPECTOR EDWARD WINSKI, et al., )
)
Defendants. )

---

### REPLY BRIEF IN SUPPORT OF DEFENDANT MITSUI FUDOSAN AMERICA, INC.'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

KING & SPALDING LLP
Paul A. Straus
Satyam N. Bee
1185 Avenue of the Americas
New York, NY  10036
Telephone:  (212) 556-2100
Fax:  (212) 556-2222
pstraus@kslaw.com
sbee@kslaw.com

Attorneys for Defendant Mitsui Fudosan America, Inc.

Of Counsel:
Timothy J. Sullivan
1700 Pennsylvania Avenue, NW
Suite 200
Washington, D.C.  20006
Telephone:  (202) 737-0500
tjsullivan@kslaw.com

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................... 1

ARGUMENT .................................................................................................................................. 1

    A.  Plaintiffs Fail to Plead that Mitsui is a State Actor ............................................................ 1

        1.  Plaintiffs' public function argument fails because the operation of a public space by a private party does not constitute state action. ............................................... 1

        2.  Plaintiffs fail to plead joint action by Mitsui. ................................................... 3

    B.  Mitsui Cannot Be Held Liable for the Acts of a Security Guard Based on a Single and Unprecedented Alleged Incident ................................................................................. 5

    C.  Plaintiffs fail to plead the existence of a conspiratorial agreement or that the parties acted in concert ............................................................................................................... 9

CONCLUSION ............................................................................................................................. 10

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Bacquie v. City of New York*,
  No. 99CIV.10951(JSM), 2000 WL 1051904 (S.D.N.Y. July 31, 2000) ...................9

*Bd of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*,
  520 U.S. 397 (1997)..............................................................................................7

*Betts v. Shearman*,
  No. 12 Civ. 3195(JPO), 2013 WL 311124 (S.D.N.Y. Jan. 24, 2013) .....................4

*Cassaboon v. Town of Somers*,
  359 F. Supp. 2d 320 (S.D.N.Y. 2005)..............................................................9, 10

*City of Canton v. Harris*,
  489 U.S. 378 (1989)..........................................................................................7, 8

*Civic Center Motors, Ltd. v. Mason Street Import Cars, Ltd.*,
  387 F. Supp. 2d 378 (S.D.N.Y. 2005)....................................................................6

*Connick v. Thompson*,
  131 S.Ct. 1350 (2011)........................................................................................7, 8

*Evans v. Newton*,
  382 U.S. 296 (1966)..........................................................................................2, 3

*Flagg Brothers, Inc. v. Brooks*,
  436 U.S. 149 (1978).............................................................................................2

*Forbes v. City of New York*,
  No. 05 Civ. 7331(NRB), 2008 WL 3539936 (S.D.N.Y. Aug. 12, 2008) .........3, 4, 5

*Ginsberg v. Healey Car & Truck Leasing, Inc.*,
  189 F.3d 268 (2d Cir. 1999)...............................................................................3, 4

*Integrated Sys. and Power, Inc. v. Honeywell Int'l, Inc.*,
  No. 09 CV 5874(RPP), 2009 WL 2777076 (S.D.N.Y. Sept. 1, 2009) ...................10

*Kramer v. Time Warner Inc.*,
  937 F.2d 767 (2nd Cir. 1991)................................................................................6

*Smith v. Wright*,
  No. 9:06–CV–00401(FJS/DEP), 2011 WL 4902860 (N.D.N.Y. Aug. 31, 2011) ...................10

*Stewart v. Victoria's Secret Stores, LLC*,
  851 F. Supp. 2d 442 (E.D.N.Y. 2012) ...............................................................3, 9

*Tomlins v. Village of Wappinger Falls Zoning Bd. of Appeals*,
    812 F. Supp. 2d 357 (S.D.N.Y. 2011) .................................................................................6

*Utah Gospel Mission v. Salt Lake City Corp.*,
    425 F.3d 1249 (10th Cir. 2005) ..........................................................................................3

*Walker v. City of New York*,
    974 F.2d 293 (2d Cir. 1992) ................................................................................................7

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26(d) ...................................................................................................................10

**PRELIMINARY STATEMENT**

Faced with the evident deficiencies in their Amended Complaint, Plaintiffs now seek to cure them through strained argument and novel allegations, but still come up short. *First*, Plaintiffs' entire argument that they have pled state action rests on a proposition that both the Supreme Court and this very Court have soundly rejected: that operation of a public park is an exclusively "public function" that is sufficient to turn a private party into a state actor. Plaintiffs also fail to allege "joint action," because a request for police assistance does not make Mitsui a state actor, particularly where, as in this case, the police make an independent and informed decision to act. *Second*, even if Plaintiffs were somehow able to paint the conduct of an unnamed security guard as state action, the Amended Complaint does not—and could not—allege, based on this solitary incident, that Mitsui may be held liable for that conduct. Plaintiffs' sole basis for attempting to impute this to Mitsui, a supposed failure to train, is not even alleged in the Amended Complaint, nor could it be. *Third*, Plaintiffs' conspiracy allegations suffer from the same deficiencies, and cannot plausibly sustain the inference, under this Circuit's precedents, that Mitsui and the police agreed to act in concert to violate Plaintiffs' constitutional rights.

Accordingly, Mitsui's motion to dismiss should be granted.[1]

**ARGUMENT**

A. <u>Plaintiffs Fail to Plead that Mitsui is a State Actor</u>

    1. Plaintiffs' public function argument fails because the operation of a public space by a private party does not constitute state action.

In arguing that Mitsui should be considered a state actor for purposes of § 1983 liability, Plaintiffs assert that Mitsui's maintenance of the 100 William Street Atrium as a privately-owned

---

[1] Plaintiffs offer no substantive reply to Mitsui's arguments regarding the Eighth and Ninth Causes of Action, which should be dismissed for those reasons as well. *See* Mitsui's Memorandum in Support of its Motion to Dismiss ("Moving Br.") at 9; Plaintiffs' Memorandum in Opposition to Mitsui's Motion to Dismiss ("Opp.") at 2 n.4.

1

public space ("POPS"), in and of itself, is sufficient to find Mitsui to be a state actor. *See* Opp. at 12. This "public function" argument rests entirely on Plaintiffs' characterization of the Atrium as wholly analogous to a publicly operated park and their misapplication of the Supreme Court's decision in *Evans v. Newton*, 382 U.S. 296 (1966). However, the Supreme Court, as well as this Court, have determined that Plaintiffs' sole asserted basis for claiming state action is insufficient.

In *Evans*, the petitioners sought to remove the city of Macon, Georgia as trustee of a park and to appoint others as trustees who would make the park available only to white people. The city had maintained the park for years, and it was considered an integral part of the city's activities. In holding that the appointment of private trustees did not authorize segregation in the park, the court held that "the momentum [the park] acquired as a public facility is certainly not dissipated *ipso facto* by the appointment of 'private' trustees. So far as this record shows, there has been no change in municipal maintenance and concern over this facility…. If the municipality remains entwined in the management or control of the park, it remains subject to the restraints of the Fourteenth Amendment…." *Evans*, 382 U.S. at 301.

In *Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149 (1978), the Supreme Court expressed doubt that *Evans* established that the operation of a park constituted an exclusively public function. The Supreme Court found that *Evans* was a case of "extraordinary circumstances," and noted that the Court's opinion emphasized that the record in *Evans* "showed 'no change in the municipal maintenance and concern over [the park].'" *Flagg Brothers*, 436 U.S. at 159 n.8. The transfer of the park to private trustees "had not been shown to have eliminated the actual involvement of the city in the daily maintenance and care of the park." *Id.*

This Court has recognized that, in light of *Flagg Brothers*, *Evans* does not support Plaintiffs' argument that the maintenance and operation of a public park constitutes state action.

*See Forbes v. City of New York*, No. 05 Civ. 7331(NRB), 2008 WL 3539936, at *4 (S.D.N.Y. Aug. 12, 2008). Referring to precisely the same portion of *Evans* relied on by Plaintiffs, this Court noted "we are aware of no case that found state action solely based on…the cited portion of *Evans*." *Id.* It further held in that case that Lincoln Center's agreement with the City of New York to maintain and provide security services for Damrosch Park "does not make the Lincoln Center defendants state actors." *Id.* at *7. The Court did not find it "possible to deem Lincoln Center a state actor based solely on its overall relationship with the City." *Id.* at *8. *Cf. Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1255 (10th Cir. 2005) (citation omitted) ("*Evans* has since been limited to the unique facts involved.").

Thus, the operation of a public space does not itself turn a private party into a state actor, and, in any event, the facts alleged in the Amended Complaint do not present the "extraordinary circumstances" at issue in *Evans*.[2] Accordingly, Plaintiffs' assertion that Mitsui's maintenance of the Atrium is an exclusively public function, sufficient to make Mitsui a state actor, fails.

        2.        Plaintiffs fail to plead joint action by Mitsui.

Plaintiffs do not argue that Mitsui is a state actor based on "joint action," and for good reason.[3] To show joint action based on specific interactions between the state and a private actor, plaintiffs must allege a "'plan, prearrangement, conspiracy, custom, or policy' shared by the private actor and the police." *Forbes*, 2008 WL 3539936, at *5 (citing *Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268, 272 (2d Cir. 1999)). That is exactly what Plaintiffs have failed to allege here.

---

[2] Unlike in *Evans*, there is no allegation that the City of New York has historically been or is currently involved in the "daily maintenance and care" of the 100 William Street Atrium.

[3] Plaintiffs allege interaction between a security guard and the police in the context of their Section 1983 conspiracy claim. *See* Opp. at 19-21. Because the "concepts of acting 'jointly' or in 'conspiracy with' state actors are intertwined" (*Stewart v. Victoria's Secret Stores*, *LLC*, 851 F. Supp. 2d 442, 445 (E.D.N.Y. 2012)), Mitsui addresses here the issue of whether the Amended Complaint can be interpreted to plead joint action.

3

Plaintiffs' Amended Complaint alleges only a single, isolated incident that took place on one night in 2012. They cannot plausibly assert any prearrangement, custom, or policy between the state and Mitsui supporting a finding of state action. The only supposed contact with the state is an alleged conversation in which a building security guard may or may not have requested that the police remove the protestors from the 100 William Street Atrium. *See* Opp. at 7-8. However, as shown in Mitsui's moving brief, calling the police and providing information, even incorrect information, is not sufficient to plead state action by a private defendant. *See* Moving Br. at 13-14 & n.13 & cases cited.[4] The provision of information is not sufficient to constitute state action "even if that information…results in the officers taking affirmative action" such as an arrest or forcible removal. *Betts v. Shearman*, No. 12 Civ. 3195(JPO), 2013 WL 311124, at *14 (S.D.N.Y. Jan. 24, 2013); *accord Forbes*, 2008 WL 3539936, at *9. Similarly, a party's failure to prevent the police from violating constitutional rights after that party has requested the police to take action is also insufficient in itself to constitute joint action. *Ginsberg*, 189 F.3d at 272-73.

In fact, any possible inference of joint action is negated by Plaintiffs' own allegations. According to the facts Plaintiffs alleged, the police were made aware of the nature of the POPS prior to dispersing the protestors and nonetheless made an *independent decision* to do so. "Where…a police officer exercises independent judgment in how to respond to a private party's legitimate request for assistance, the private party is not 'jointly engaged' in the officer's conduct so as to render it a state actor under Section 1983." *Ginsberg*, 189 F.3d at 272.

---

[4] Plaintiffs attempt to distinguish the many cases Mitsui cites because they involved private property. The 100 William Street Atrium is also privately owned property. As demonstrated in § (A)(1), *supra*, the allegation that Mitsui was required to make the Atrium accessible to the public at certain times does not transform its conduct into state action.

4

Plaintiffs assert that Deputy Inspector Winski had "essentially unfettered discretion" with respect to the OWS in the Atrium and "had carte blanche as the final policymaker…to address [the] 'problem' as he pleased." Opp. at 18, 20. Far from merely "adopt[ing] the incorrect position" allegedly advocated by Mitsui (Opp. at 18), Deputy Inspector Winski was made fully aware of the nature of the POPS, having been "told by various OWS participants present that the plaza at 100 William Street was public space." Am. Compl. ¶ 345. The OWS participants "pointed out to Defendant Deputy Inspector Winski that they were entitled to be there under the publicly accessible open area's rules, and pointed to legally required signage in the public plaza that stated in large letters, 'REQUIRED TO BE OPEN TO THE PUBLIC FROM 7AM TO MIDNIGHT.'" Am. Compl. ¶ 347. Notwithstanding that information, Plaintiffs allege, Deputy Inspector Winski "instigated" the forcible removal of the OWS participants. Am. Compl. ¶ 349 & Exhibit G at timestamp 18:30. This independent exercise of judgment is the pivotal element distinguishing this case from the outcome in *Forbes* and precludes a finding of joint action. In *Forbes*, the Court ultimately upheld the complaint because the police did not personally observe the plaintiff's conduct but instead relied on Lincoln Center's assessment. *Forbes*, 2008 WL 3539936, at *9 & n.10. Here, the police did personally observe Plaintiffs' conduct, and prior to their decision to disperse the protest, were fully informed of the public nature of the space, and chose their course of action.

      B.      Mitsui Cannot Be Held Liable for the Acts of a Security Guard
             Based on a Single and Unprecedented Alleged Incident

Even if Plaintiffs sufficiently pled that the building agent's call to the police was state action—which they have not—the Amended Complaint still does not allege any basis for holding Mitsui liable for that conduct. *See* Moving Br. at 15-17. Plaintiffs attempt to rectify this fatal deficiency by asserting—without resort to a single supporting fact—that "Mitsui acted with

5

deliberate indifference to the constitutional rights of citizens by *failing to train* its employees[.]" Opp. at 16 (emphasis added).  As a threshold matter, the allegation that Mitsui failed to adequately train employees is found nowhere in the Amended Complaint, but instead is raised for the first time in Plaintiffs' Opposition Brief.  Having failed twice to plead facts supporting Mitsui's liability for the acts of this security guard, Plaintiffs cannot ask the Court to consider such allegations in determining the sufficiency of their pleadings.  *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2nd Cir. 1991) (in considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a district court must limit itself to facts stated in the complaint); *Tomlins v. Village of Wappinger Falls Zoning Bd. of Appeals*, 812 F. Supp. 2d 357, 363 n.9 (S.D.N.Y. 2011) ("[T]he complaint may not be amended simply by raising new facts in opposition to Defendants' motion."); *Civic Center Motors, Ltd. v. Mason Street Import Cars, Ltd.*, 387 F. Supp. 2d 378, 382 (S.D.N.Y. 2005) (Allegations not pled in the complaint but raised for the first time in opposition papers "cannot be considered in opposition to a motion to dismiss.") (citing *Kramer*, 937 F.2d at 773).[5]

In fact, Plaintiffs' novel argument is contradicted by the very facts they allege.  In order to impute liability to Mitsui under Plaintiffs' newly proposed theory, they must allege a "failure

---

[5]  Plaintiffs' brief is littered with such improper attempts to escape the deficiencies of their pleading.  For instance, Plaintiffs set up a straw man argument by falsely asserting throughout their brief that Mitsui "relies heavily" for its defense on the characterization of the Atrium as an area for "circulating." Opp. at 10; *see also id.* at 2-3 & n.6, 6-7, 10-11, 15-16.  In fact, this descriptive detail is noted on one page in the Statement of Facts (Moving Br. at 5) and never cited or discussed as the basis for—or even in connection with—any argument for dismissal.  The most egregious of Plaintiffs' improper arguments, however, is the character attack on Mitsui, based on allegations of conduct during World War II by a defunct predecessor of Mitsui's parent company that has nothing to do with this case.  Attorney Affirmation of Wylie Stecklow in Opposition to Mitsui's Motion to Dismiss ¶¶ 4-9.  Plaintiffs' resort to slurs on Mitsui's "character for truthfulness" is not only irrelevant to the issue of the sufficiency of their pleading, but also inflammatory and improper.  The Court should disregard this gratuitous attack.

to train [that] amounts to deliberate indifference to the rights" of those with whom the building security guard would come into contact. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *see also* Moving Br. at 15-17. "Deliberate indifference is a stringent standard of fault" under which a plaintiff must show the defendant "disregarded a *known or obvious consequence* of his action." *Bd of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 410 (1997) (emphasis added) (internal question marks omitted); *see also Connick v. Thompson*, 131 S.Ct. 1350, 1359 (2011) (A defendant's "culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train.").

Plaintiffs' burden to show deliberate indifference by Mitsui is even heavier, because it is based entirely on a single incident of alleged agent misconduct. While Plaintiffs cite *Walker v. City of New York,* 974 F.2d 293 (2d Cir. 1992) for the factors that determine when training is inadequate, they ignore the preceding discussion in that opinion, which holds that allegations of a single incident are ordinarily insufficient to support the inference of inadequate training. *Id*. at 296; *see also Connick*, 131 S.Ct. at 1366 (noting that there can be no "single-incident liability" for § 1983 violations, absent allegations that fall in a particular "narrow range"). As the Supreme Court has held, "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 131 S.Ct. at 1360 (internal quotation omitted). In order to plead deliberate disregard based on a single incident, plaintiffs need to allege that the employer must "*know*[] *'to a moral certainty'* that her employees *will confront*" the type of situation allegedly resulting in a violation. *Walker*, 974 F.2d at 297 (emphasis added) (quoting *Canton*, 489 U.S. at 390 n.10). Thus, a state actor "does not exhibit deliberate indifference by failing to train employees for rare or unforeseen events." *Id*. The archetype for "moral certainty" cited by the Supreme Court is

7

the likelihood that armed police officers will seek to arrest fleeing criminals in the course of their duties, and therefore must be trained in proper use of lethal force. *Connick*, 131 S.Ct. at 1361 (citing *Canton*, 489 U.S. at 390 n.10).

To infer that it is a *moral certainty* that a private security guard—whose primary job responsibility is to ensure the safe operations of an office building—would be called on to determine the constitutionality of a protest in that building's pedestrian walkway stretches the term "moral certainty" beyond meaning. Plaintiffs have pled only an unprecedented, isolated incident. They have not pled a single prior incident or other notice of a need to protect against constitutional violations in all the years Mitsui has owned the property. A protest occurring in the 100 William Street Atrium is certainly not impossible, but as the lack of precedent shows, it is unlikely, and even if it were a *likely* event, Plaintiffs cannot plausibly label it a "moral certainty."[6] In these circumstances, Mitsui cannot be held, based on a single alleged incident, to have shown deliberate indifference to the rights of others through inadequate training.

Moreover, the facts actually alleged in the Amended Complaint specifically negate any inference that Mitsui improperly trained its employees. As Plaintiffs note, the owners of the Atrium, Mitsui, placed a "clearly visible sign stating: 'REQUIRED TO BE OPEN TO THE PUBLIC FROM 7AM TO MIDNIGHT'" in the 100 William Street Atrium. Am. Compl. ¶ 341. Indeed, the fact that the Atrium was clearly marked by management as an open public space is the sole factual allegation in the Amended Complaint regarding Mitsui's corporate policy. Accordingly, to credit Plaintiffs' new claim of improper training would necessitate the

---

[6] This can be contrasted to the moral certainty that a police officer—whose primary job responsibility is to dissuade and apprehend criminals, and who is the very embodiment of state power—will be called upon to apprehend fleeing suspects with force, putting those suspects' constitutional rights at issue.

8

implausible presumption that Mitsui ordered the security guards to *disregard* the signs they passed every day marking the 100 William Street Atrium as "required to be open to the public."

      C.      Plaintiffs fail to plead the existence of a conspiratorial agreement or that the parties acted in concert

Plaintiffs' conspiracy claim fails for the simple reason that the behavior described in the Amended Complaint does not plausibly suggest the existence of an agreement between Mitsui and Defendant Winski to act in concert to violate constitutional rights. *See* Opp. at 19-21. As noted above, the concepts of conspiracy and joint action are intertwined, and the factors undermining the plausibility of joint action apply equally to the plausibility of a conspiratorial agreement in this case. *See Stewart*, 851 F. Supp. 2d at 445. In addition, "conclusory allegations or naked assertions are insufficient to plead a conspiracy to violate a person's constitutional rights." *Bacquie v. City of New York*, No. 99CIV.10951(JSM), 2000 WL 1051904, at *2 (S.D.N.Y. July 31, 2000). Plaintiffs, however, assert a conspiracy based on the fact that the officer in question stated that he received a complaint from a building employee. Opp. at 19-20. Even assuming that the police acted in response to a call from an agent of Mitsui, that is not sufficient to plead that an agreement was reached. *See Bacquie*, 2000 WL 1051904, at *2. The court in *Bacquie* held that a conspiratorial agreement required sound allegations that the employees "did more than just call the police and swear out a complaint." *Id*. In fact, that activity is the sum total of the supposed conspiracy in this case.

Plaintiffs also fail to sufficiently plead that the two parties acted *in concert* pursuant to a conspiracy. *See* Opp. at 19-20. The Amended Complaint asserts, at the very most, that police removed the protestors in response to a building agent's request. However, making a request of the state and even persuading the state to take the requested action is not sufficiently coordinated activity to be considered "acting in concert" for purposes of a § 1983 conspiracy. *Cassaboon v.*

9

*Town of Somers*, 359 F. Supp. 2d 320, 326 (S.D.N.Y. 2005).  In *Cassaboon*, the court held that requesting a permit and even "inducing (*i.e.*, persuading) the Town Board to grant his application…are the actions of a private person who asks a boon from a local governmental entity," not a conspiracy.  *Id*.  The court held that these "conclusory allegations…unsupported by any evidence of conspiracy or concerted action" were insufficient to show the parties "acted in concert."  *Id.*

Accordingly, Plaintiffs' conspiracy claim should be dismissed.[7]

## CONCLUSION

For the foregoing reasons, all of Plaintiffs' causes of action against Mitsui should be dismissed with prejudice, and their request for discovery prior to the decision on this motion denied.

---

[7]  The Court should also deny Plaintiffs' request to stay its decision on this motion until "limited" discovery and supplemental briefing has been conducted.  Opp. at 21.  Having failed to reach out to Mitsui under Fed. R. Civ. P. 26(d) regarding discovery in the nine months since bringing suit, Plaintiffs should not now be permitted to obtain discovery of essentially all relevant documents (and more) before this Court has ruled on Mitsui's motion to dismiss.  *Cf. Integrated Sys. and Power, Inc. v. Honeywell Int'l, Inc.*, No. 09 CV 5874(RPP), 2009 WL 2777076, at *1 (S.D.N.Y. Sept. 1, 2009) (courts should consider several factors, including the burden of discovery and potential prejudice in deciding to permit discovery before the motion to dismiss); *accord Smith v. Wright*, No. 9:06–CV–00401(FJS/DEP), 2011 WL 4902860, at *16 (N.D.N.Y. Aug. 31, 2011) (finding no prejudice where "there is no indication that plaintiff has sought to commence discovery in the last six months").

Dated: February 12, 2012
      New York, New York

                      KING & SPALDING LLP

                      By: /s/ Paul A. Straus
                      Paul A. Straus
                      Satyam N. Bee
                      1185 Avenue of the Americas
                      New York, NY 10036
                      Telephone: (212) 556-2100
                      Fax: (212) 556-2222
                      pstraus@kslaw.com
                      sbee@kslaw.com

                      Attorneys for Defendant
                      Mitsui Fudosan America, Inc.

Of Counsel:
Timothy J. Sullivan
1700 Pennsylvania Avenue, NW
Suite 200
Washington, D.C. 20006
Telephone: (202) 737-0500
tjsullivan@kslaw.com

11