```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
YDANIS RODRIGUEZ, et al.,

                Plaintiffs,          **MEMORANDUM AND ORDER**

        - against -                    12 Civ. 3389 (NRB)

EDWARD WINSKI, et al.,

                Defendants.
----------------------------------X
```

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

The National Press Photographers Association (the "NPPA" or "plaintiff") and sixteen individual plaintiffs filed their First Amended Complaint (the "FAC") on October 16, 2012, asserting 49 separate causes of action against various institutional and individual defendants, including, inter alia, allegations of the violation of their federal First and Fourth Amendment rights, the violation of their New York State constitutional rights, conspiracy to violate their constitutional rights, and state tort law claims. The NPPA is now the sole remaining plaintiff in the action. Pending before the Court is its motion for leave to amend the FAC. For the reasons set forth below, the NPPA's motion is granted in part and denied in part.

## I. BACKGROUND[1]

The claims in this case "arise from a series of incidents in connection with Occupy Wall Street ["OWS"] protests." FAC ¶ 2. Beginning in approximately September 2011, OWS protestors gathered or attempted to gather in a number of Manhattan locations to call attention to "the effects of income inequality on society." Id. ¶ 251. The NPPA, a 501(c)(6) tax exempt organization "dedicated to the advancement of visual journalism," id. ¶ 29, alleges on behalf of its approximately five thousand (5,000) active members that the City of New York, Edward Winski, Michael Bloomberg, Raymond Kelly, Robert Matrisiciani, Steven Caro, Margaret Monroe, Fernando Trinidad, Francis Tloczkowski and Daniel Albano (together, the "City Defendants") denied journalists access to protest sites, forcibly interfered with their coverage of the demonstrations, and, in some cases, placed NPPA members under arrest while they were attempting to document the protests.

The NPPA joined the case on October 16, 2012, six (6) months after fifteen individual plaintiffs had commenced the action. Following the Court's September 26, 2013 Memorandum and Order dismissing certain claims and severing claims brought against a subset of defendants, the remaining parties engaged in over a

---

[1] The facts described below are largely drawn from the FAC [ECF No. 33] and the Proposed Second Amended Complaint ("PSAC") [ECF No. 226-1]. The Court assumes familiarity with its September 26, 2013 Memorandum and Order [ECF No. 80], which more fully describes the factual background of the case.

year's worth of fact discovery before jointly requesting referral to a magistrate for settlement discussions.  See Ltr., Nov. 24, 2014, ECF No. 116.  The Court signed an order of reference the following day, but denied defendants' subsequent request for a stay of discovery, encouraging the parties to "focus on discovery that will advance the settlement process."  Ltr., Feb. 9, 2015, ECF No. 146.  Targeted discovery and several rounds of settlement negotiations ensued.

By April 24, 2018, every plaintiff but the NPPA had either settled in principle or withdrawn their claims against defendants.  On June 15, 2018, the City Defendants filed a letter seeking leave to file a motion for judgment on the pleadings as to the NPPA's remaining claims, arguing that the NPPA did not have standing to sue and that it had not adequately pleaded its causes of action.  See Ltr., ECF No. 218, June 15, 2018.  The NPPA now moves for leave to amend the FAC in advance of the City Defendants' anticipated motion.

## II.  **PROPOSED AMENDMENTS**

Plaintiff repeatedly characterizes its motion as an effort to streamline the case and tailor the complaint to reflect the NPPA's status as the sole remaining plaintiff in the action.  To plaintiff's credit, the PSAC does cull settled or withdrawn parties and claims from the pleading, conform previously pleaded allegations to the present posture of the case, and make other

3

non-substantive changes to the FAC, see, e.g., PSAC ¶ 53 (changing "she was approached" to "she alleges she was approached"). However, the NPPA's suggestion that its proposed amendments are merely cosmetic dramatically understates the scope and significance of several contemplated changes.

For one, the PSAC expands the factual predicate of plaintiff's causes of action from "a series of incidents in connection with Occupy Wall Street protest," FAC ¶ 2, to actions arising from demonstrations generally, including "The People's Climate March in 2014, Black Lives Matter in 2015, National School Walkout for Gun Control in 2018, and significant protests since the election of President Donald Trump in 2016 on a wide range of issues from immigration to women's rights." PSAC ¶ 2. To this end, plaintiff scrubs the complaint of specific references to the OWS protests in favor of generic descriptions of protest activity. See, e.g., id. ¶ 12.[2] Plaintiff also adds allegations relating to the July 2018 arrest of NPPA member Angus Mordant while he was covering "a demonstration regarding a shooting that had occurred in the Bronx," id. ¶ 56, and the arrest of NPPA member Robert Stolarik while he was taking photographs in the Bronx on August 4, 2012 for a story about the use of stop-and-frisk tactics by the NYPD, id. ¶¶ 45-48 (incorporating by reference Winnie Hu, New York Police Officer Is

---

[2] By way of illustration, text searches performed by the Court reveal that the PSAC reduces the number of "OWS" or "Occupy" references from approximately 275 to eight.

4

Convicted of Lying About Photographer's Arrest, The New York Times (Oct. 15, 2015), https://nyti.ms/2DZhN5q). Neither incident has a meaningful connection to the OWS protests.

Second, the PSAC pleads new theories of relief. While the parties dispute whether the NPPA actively sought damages during its settlement negotiations with the City Defendants, it is clear that the NPPA did not assert a claim for monetary relief in its 939-paragraph FAC. See FAC ¶ 144 ("Plaintiff NPPA seeks injunctive and equitable relief . . . ."). The NPPA now seeks to recover for economic harm suffered not only by the organization itself but by its individual members. See, e.g., PSAC ¶ 65 ("Plaintiff NPPA seeks damages as well as injunctive and equitable relief . . . ."); id. ¶ 98 ("The NPPA members have been economically harmed by not only being prevented from performing their jobs and suffering monetary loss when they cannot sell their images in a timely manner, but also being required to take time away from other employment opportunities while defending any criminal charges. NPPA is also harmed financially as it has dedicated significant resources towards supporting and defending its members."). In this same vein, the NPPA proposes to add a claim for tortious interference with business relations, also commonly referred to as "tortious interference with economic advantage," Catskill Dev., L.L.C. v. Park Place Entm't Corp., 547 F.3d 115, 132 (2d Cir. 2008). See PSAC ¶¶ 144–48.

Finally, the proposed amendments include new allegations relating to the arrests of two members of the NPPA that arise from their coverage of OWS-related protests. See PSAC ¶¶ 39-41, 55. NPPA member Douglas Higginbotham was arrested on November 15, 2011 while filming allegedly wrongful evictions of OWS protesters, and Julie Rinehard was arrested in September 2012 at a 1-year anniversary OWS protest. Both arrests predate the filing of the FAC.

### III. DISCUSSION

a. Legal Standard

Rule 15 of the Federal Rules of Civil Procedure directs a court to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith." AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A., 626 F.3d 699, 725 (2d Cir. 2010) (quoting Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993)). While mere delay is thus not a sufficient basis for denying leave to amend, "the longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice." Block, 988 F.2d at 350 (quoting Evans v. Syracuse City Sch. Dist., 704 F.2d 44, 47 (2d Cir.1983)).

In determining what constitutes sufficient prejudice for these purposes, we consider whether a proposed amendment would

"require the opponent to expend significant additional resources to conduct discovery and prepare for trial" or "significantly delay the resolution of the dispute." Block, 988 F.2d at 350. We will further be "hesitant to allow amendment where doing so unfairly surprises the non-movant and impedes the fair prosecution of the claim." Monahan v. New York City Dep't of Corr., 214 F.3d 275, 284 (2d Cir. 2000).

"Leave to amend may [also] be denied on grounds of futility if the proposed amendment fails to state a legally cognizable claim or fails to raise triable issues of fact." AEP Energy, 626 F.3d at 726.

b. Delay

Nearly six years have passed between the filing of the FAC and the pending motion to amend. In these circumstances, the "burden is on the party who wishes to amend to provide a satisfactory explanation for the delay." Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 72 (2d Cir. 1990). Plaintiff contends that it requested leave to bring the instant motion shortly after settlement negotiations between the NPPA and City Defendants broke down, necessitating amendments "to narrowly tailor their claims as the only remaining Plaintiff in this litigation." Pl.'s Mem. of Law in Supp. of its Mot. to Amend ("Pl.'s Br.") at 4, ECF No. 227. This may explain why the NPPA waited to streamline the FAC until after all other plaintiffs had settled or withdrawn their claims;

7

better to prune the pleading of irrelevant allegations in one fell swoop than seriatim. But it fails to explain why the NPPA has waited to assert allegations relating to incidents involving its members that occurred prior the filing of the FAC, or why it has taken the NPPA six years to plead claims for monetary damages or tortious interference. It also leaves unanswered why the NPPA delayed in expanding the scope of the complaint to include incidents arising from non-OWS demonstrations when it has known of such incidents from the outset of the litigation.[3]

Indeed, the timing of the proposed substantive amendments makes little sense in the broader context of the case. The NPPA had every incentive to bolster, clarify, or add to its allegations prior to or while engaging in extensive settlement negotiations and a period of targeted (but hardly limited) discovery, particularly with respect to allegations of economic harm and damages suffered by both the organization and its individual members. The NPPA's apparent disinterest in doing so cannot be explained away as a mere function of the "schedule within which

---

[3] For example, plaintiff has made no effort to explain why it failed to allege Robert Stolarik's non-OWS-related August 2012 arrest in the FAC, see PSAC ¶¶ 45-48, when it included allegations relating to Stolarik's OWS coverage, see FAC ¶¶ 380-84. The pleading of the latter but not the former reflects a deliberate decision on the part of the NPPA to limit this litigation to claims arising from "a series of incidents in connection with Occupy Wall Street protests." FAC ¶ 2. That the NPPA has apparently reconsidered that decision is not a sufficient explanation for the six-year delay.

8

all parties in this matter agreed to conduct settlement discussions and related discovery." Pl.'s Br. at 4.

Accordingly, plaintiff has failed to offer a valid reason for its significant delay in proposing substantive amendments to the FAC. With this in mind, we now turn to whether the City Defendants have made a sufficient showing of prejudice.

c. Prejudice

City Defendants argue that the NPPA's proposed amendments would require expenditure of significant additional resources to conduct discovery and significantly delay resolution of this matter. We agree with respect to some, but not all, of the proposed amendments.

First, we agree that proposed allegations related to non-OWS protest activities are likely to significantly expand the scope and length of discovery, and thus unduly prejudice the City Defendants. This case was brought in the wake of the Occupy Wall Street protests and, for the last seven years, the operative pleadings have explicitly limited its factual predicates to conduct arising from those protests. At this juncture, the parties should be endeavoring to complete any outstanding discovery, not introducing new "transactions and occurrences" into the litigation.[4] See Pl.'s Mem. of Law in Reply at 4, ECF No. 230.

---

[4] Plaintiff's insistence that the "transactions and occurrences" at issue in this case are the City Defendants' "constitutionally violative [actions]" generally, Pl.'s Br. at 6, and not more specifically the curtailing of

Because, as plaintiff acknowledges, "amendment is properly denied where a movant seeks to change the focus of the lawsuit, such as making allegations relating to a different set of facts than the original pleading," Pl.'s Br. at 3, we deny plaintiff leave to so-amend the FAC.

A similar rationale applies to the NPPA's proposed amendments regarding economic harms suffered by its individual members. Plaintiff seeks to allege damages related to its members' inability to sell their images in a timely manner, as well as damages related to lost opportunities caused by their need to defend themselves against criminal charges. These claims were obviously not "one of the objects of discovery and related closely to the original claim," Tokio Marine & Fire Ins. Co. v. Employers Ins. of Wausau, 786 F.2d 101, 103 (2d Cir. 1986); they are entirely new theories of relief that present extensive problems of proof, requiring discovery into, e.g., the idiosyncratic financial condition of the unidentified members for whom the NPPA now seeks to recover. The resulting "mini-trials" these new allegations would entail pose a grave risk of further delay – an unacceptable proposition given the amount of time that has passed since the filing of the FAC and the substantial amount of pretrial discovery that has already been

---

constitutional rights during OWS protests, is belied by plain readings of both the initial complaint and the FAC, see, e.g., FAC ¶ 2 ("The claims arise from a series of incidents in connection with Occupy Wall Street protests . . . ."), and construes the factual basis for the NPPA's claims at too abstract a level of generality.

completed.[5] See Barrows v. Forest Labs., Inc., 742 F.2d 54, 58 (2d Cir. 1984) ("In view of the fact that substantial discovery had already been completed, it was certainly reasonable, two and one-half years after the complaint had been filed, to deny such a recasting of the complaint's theories of relief.").

However, the City Defendants have failed to demonstrate that they will be sufficiently prejudiced by the timing of an addition of a claim for damages suffered directly by the NPPA. The expenses that the NPPA has incurred in "supporting and defending its members" in connection with the alleged incidents, PSAC ¶ 140, are presumably readily ascertainable and capable of being explored at a deposition of the NPPA, which the parties agree has yet to occur and will thus not require duplication of efforts already expended.[6]

With respect to the allegations involving the arrests of NPPA members Higginbotham, id. ¶¶ 39–41, and Rinehart, id. ¶ 55, plaintiff concedes that amendments are "properly denied where

---

[5] For these same reasons, we deny plaintiff's request for leave to assert a claim for tortious interference of business relations, which would also require substantial member-specific discovery and is thus not merely a "variation[] on the original theme" of the case, Hanlin v. Mitchelson, 794 F.2d 834, 841 (2d Cir. 1986), or an "alternative claim[]," Moreno-Godoy v. Gallet Dreyer & Berkey, LLP, No. 14 Civ. 7082 (PAE/JCF), 2016 WL 5817063, at *2 (S.D.N.Y. Oct. 4, 2016), as plaintiff contends.

[6] To the extent that the PSAC can be read to assert a tortious interference claim for damages suffered by the NPPA as an organization (as opposed to its individual members), we reject it as futile. To state a claim for tortious interference under New York law, the NPPA must allege, inter alia, that "the plaintiff had business relations with a third party," Catskill Dev., 547 F.3d at 132. The NPPA has failed to adequately allege any such business relations. Any other issues with respect to the legal sufficiency of the NPPA's damages claim may be addressed in subsequent motion practice.

there was undue delay and evidence shows that the movant was aware of the 'new' facts for several years prior to raising them with defendants and/or moving to amend." Pl.'s Br. at 3. Such is the case here, where the arrests of Higginbotham and Rinehart were known or should have been known at the time of the filing of the FAC (and well in advance of the parties' referral to a magistrate for settlement discussions).[7] Because these allegations are asserted "after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment[s] would prejudice the defendant," Cresswell, 922 F.2d at 72 (2d Cir. 1990), we reject plaintiff's belated attempt to assert them.

Finally, insofar as the PSAC proposes to excise parties, claims, and allegations that are no longer relevant to the action, or clarify previously pleaded allegations, the City Defendants make no showing of bad faith or prejudice and the Court perceives none. Given that amendments of this kind would

---

[7] Moreover, Higginbotham has already brought a lawsuit against the City of New York alleging, inter alia, false arrest and that the City "intentionally interfered with and prevented Plaintiff from exercising his rights under the First and Fourteenth Amendments" in connection with his coverage of the OWS demonstration. First Am. Compl. ¶¶ 21–27, Higginbotham v. City of New York, et al., 14 Civ. 8549 (PKS), ECF No. 29. These claims were dismissed on summary judgment, see Higginbotham, ECF No. 65, and the Second Circuit affirmed the dismissal on appeal (which the NPPA joined as an amicus curiae). See Higginbotham, ECF No. 71. It strikes the Court as prejudicial in the extreme to now resuscitate his allegations and require defendants to devote resources to re-litigating the facts of his arrest. The same reasoning applies to the proposed amendments relating to the arrest of Stolarik, which we rejected for other reasons supra. Stolarik brought an individual lawsuit stemming from the same occurrences described in the PSAC and all but one of his causes of action were dismissed prior to trial, with a jury verdict in the City of New York's favor on the remaining claim of First Amendment retaliation. See J., Stolarik v. City of New York et al., 15 Civ. 5858 (RMB), ECF No. 194.

"significantly streamline[] this case, hopefully enabling it to reach a final resolution faster, without imposing any apparent prejudice on Defendants," Armstrong v. Homebridge Mortg. Bankers Corp., No. 07-CV-1024 (JS) (ARL, 2009 WL 3253945, at *3 (E.D.N.Y. Sept. 30, 2009), we grant plaintiff leave to so-amend the complaint.[8]

## IV. CONCLUSION

For the foregoing reasons, plaintiff's motion for leave to amend is granted in part and denied in part. Plaintiff is hereby ordered to file an amended complaint in accordance with the rulings set forth in this opinion no later than May 31, 2019. In the event that the City Defendants anticipate filing a motion for judgment on the pleadings, the parties are directed to confer on a proposed briefing schedule and submit a stipulation or letter to the Court for its endorsement. The Clerk of Court is respectfully directed to terminate the motion pending at ECF No. 225.

Dated: New York, New York
       May 16, 2019

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

---

[8] We reject the City Defendants' misplaced argument that plaintiff's motion is futile because previously pleaded causes of action would not survive a motion to dismiss. Opposition to a motion for leave to amend is not the proper vehicle for such an attack, particularly where, as here, defendants have already answered the complaint containing those causes of action, see Answer, Dec. 18, 2012, ECF No. 56.

13