```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
YDANIS RODRIGUEZ, et al.,

                Plaintiffs,                MEMORANDUM AND ORDER

        - against -                        12 Civ. 3389 (NRB)

EDWARD WINSKI, et al.,

                Defendants.
----------------------------------X
```
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

This case arises from the so-called "Occupy Wall Street" protests. After years of litigation since this case was commenced in 2012, the National Press Photographers Association (the "NPPA" or "plaintiff"), which was added as a plaintiff in the First Amended Complaint filed on October 16, 2012, is now the sole remaining plaintiff. The only remaining defendants in this action are the City of New York; former New York City Mayor Michael Bloomberg; former New York City Police Commissioner Raymond Kelly; and several officers of the New York City Police Department ("NYPD") (collectively, "defendants"). On May 16, 2019, the Court granted in part and denied in part NPPA's motion for leave to amend its First Amended Complaint, and NPPA filed a Second Amended Complaint ("SAC") on June 7, 2019. Subsequently, defendants moved to dismiss the SAC. For the following reasons, defendants' motion is granted.

## I. BACKGROUND

A. **Occupy Wall Street Protests**

The claims NPPA seeks to assert in this action are based on defendants' alleged "mistreatment of [NPPA members] during their press coverage of protests and demonstrations" that took place at various locations in New York City in 2011 as part of the "Occupy Wall Street" ("OWS") protests. SAC (ECF No. 247) ¶ 2. Plaintiff NPPA, a 501(c)(6) tax exempt New York corporation "dedicated to the advancement of visual journalism," id. at ¶ 10, alleges on behalf of its approximately five thousand (5,000) active members that the City of New York (the "City") and other individuals who are formerly or currently associated with the City in various capacities denied its members' rights. Specifically, NPPA alleges that defendants infringed its members' rights under the First Amendment to the United States Constitution ("First Amendment") and Sections 8 and 12 of Article I of the New York State Constitution by (1) interfering with its members' efforts to record certain police actions in connection with the OWS protests, id. at ¶¶ 18-19; and (2) preventing them from reaching publicly accessible spaces where the OWS protests were taking place. Id. at ¶¶ 18, 24-25, 44.

In pleading its purported claims, NPPA identifies two of its members by name. First, NPPA member Stephanie Keith was allegedly arrested on October 1, 2011 while she was covering an OWS

2

demonstration on the Brooklyn Bridge.  Id. at ¶ 44.  In addition, defendant NYPD Lieutenant Daniel Albano used physical force against Keith while she was covering a different demonstration on September 15, 2012.  Id. at ¶ 47.  Second, NPPA alleges that, on December 12, 2011, its member Robert Stolarik was physically blocked by NYPD officers when he attempted to take photos of NYPD officers arresting protesters at the Winter Garden.  Id. at ¶ 41.

NPPA also alleges that defendants infringed its members' rights by taking action on November 15, 2011 to clear its members out of the Zuccotti Park (the "Park"), which was then the primary location of the OWS protests and by restricting access to the Park for the remainder of the day.  Id. at ¶¶ 18, 25.  According to NPPA, some journalists were arrested on the night of November 15, 2011 while attempting to reach the Park.  Id. at ¶ 25.  However, NPPA does not identify any of its own members who were arrested that night.  NPPA alleges that it expended time and resources representing its members who were arrested or criminally charged in the course of covering the OWS protests.  Id. at ¶¶ 39; 49.

B. **Procedural History**

Fifteen individual plaintiffs commenced this action on April 30, 2012.  See ECF No. 1.  A few months later, on October 16, 2012, NPPA joined this case when the First Amended Complaint ("FAC") was filed.  See ECF No. 33.  Following the Court's Memorandum and Order of September 26, 2013, which dismissed certain claims and severed

3

claims brought against a subset of defendants, see ECF No. 80, the remaining parties engaged in over a year of fact discovery before jointly requesting referral to a magistrate judge for settlement discussions.  See ECF No. 116.  While the Court referred the case, see ECF No. 118, it denied defendants' subsequent request for a stay of any further discovery in the hope that the parties would "focus on discovery that will advance the settlement process." See ECF No. 146.  Targeted discovery and several rounds of settlement negotiations ensued.

By April 24, 2018, every plaintiff except NPPA had either reached a settlement in principle with defendants or withdrawn her claims.  See ECF No. 209.  On June 15, 2018, defendants filed a letter seeking leave to file a motion for judgment on the pleadings against NPPA, arguing that NPPA lacked standing to bring this action and, alternatively, had failed to adequately plead any claim.  See ECF No. 218.  In response, NPPA moved for leave to amend its FAC in advance of defendants' proposed motion.  See ECF No. 225.  On May 16, 2019, the Court issued a Memorandum and Order, granting in part and denying in part NPPA's motion.  See ECF No. 237.  In granting leave, the Court allowed NPPA only to add "a claim for damages suffered directly by the NPPA" because any other substantive amendment following an unjustified delay of six years would cause unfair prejudice to defendants.  Id. at 7-8, 11.

4

NPPA filed the SAC on June 7, 2019, see ECF No. 241, invoking 28 U.S.C. § 1331 for the Court's jurisdiction over the claims it seeks to assert under 42 U.S.C. § 1983. See SAC ¶ 5. As to the claims it seeks to assert under New York law, NPPA has relied on the Court's supplemental jurisdiction. Id. Defendants moved to dismiss the SAC on August 16, 2019. See ECF No. 246.

## II. DISCUSSION: STANDING

At the outset, the Court addresses whether NPPA has standing to bring the claims it seeks to assert in the SAC. Standing "is the threshold question in every federal case, determining the power of the court to entertain the suit." Denney v. Deutsche Bank AG, 443 F.3d 253, 263 (2d Cir. 2006). Article III of the United States Constitution limits the Court's jurisdiction to an "actual case or controversy." U.S. Const. art III, § 2. The doctrine of standing animates this constitutional limitation by requiring a plaintiff to establish "a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." Warth v. Seldin, 422 U.S. 490, 498-99 (1975).

As the party invoking federal jurisdiction, NPPA bears the burden of establishing standing. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). Under current standing jurisprudence, an organization may assert two distinct types of standing: (1)

5

organizational standing, and (2) associational standing.  Under the organizational standing theory, "an association may have standing in its own right to seek judicial relief to itself and to vindicate whatever rights and immunities the association itself may enjoy."  Warth, 422 U.S. at 511.  In contrast, under the associational standing theory, "an association has standing to bring suit on behalf of its members." Hunt v. Wash. St. Apple Advert. Commission, 432 U.S. 333, 343 (1977).  NPPA asserts both types of standing in bringing this action.  Defendants maintain that NPPA has neither.

    A.    **Organizational Standing**

As just discussed, "an association may have standing in its own right to seek judicial relief to itself and to vindicate whatever rights and immunities the association itself may enjoy" under the organizational standing theory.  Warth, 422 U.S. at 511. To establish organizational standing, an organizational plaintiff "must meet the same standing test that applies to individuals." Irish Lesbian & Gay Org. v. Giuliani, 143 F.3d 638, 649 (2d Cir. 1998).  Accordingly, NPPA bears the burden of showing: (1) a distinct and palpable injury in fact to itself as an organization; (2) that is fairly traceable to the challenged action; and (3) that a favorable decision would redress its injuries.  Nnebe v. Daus, 644 F.3d 147, 156 (2d Cir. 2011).

The relief NPPA seeks in this action includes money damages as well as injunctive and declaratory relief. However, the only injury allegedly suffered by NPPA as an organization is that NPPA "dedicated significant time, money, and resources towards advocating for its members' rights and getting criminal charges against its members dismissed after its members were arrested" as a result of the challenged conduct by defendants. SAC ¶¶ 39, 49. The SAC does not contain allegations suggesting any infringement of NPPA's own rights—as opposed to its members' rights—protected by either of the Federal and the New York State Constitutions.

1. Claim for Injunctive and Declaratory Relief

The alleged injury of "resources expended in advocating its members' rights and representing its members against criminal charges" is insufficient to establish organizational standing to pursue a claim for injunctive or declaratory relief. On this point, the Second Circuit's decision in Knife Rights, Inc. v. Vance, 802 F.3d 377 (2d Cir. 2015), is instructive and controlling. In Knife Rights, the plaintiff Knife Rights was a membership organization advocating the right to carry and use knives and tools. Id. at 381-82. Knife Rights brought a lawsuit for injunctive and declaratory relief against the City's application of New York Penal Law provisions criminalizing possession of "gravity knives," alleging that the City had applied those provisions in an overly vague manner. Id. at 379. In bringing

that lawsuit, Knife Rights asserted both associational and organizational standing. Id. at 387-88. In its effort to establish organizational standing, Knife Rights cited "the expenses [it] incurred in opposing [the City's] application" of the provisions at issue in a manner that infringed its members' due process rights under the United States Constitution as the injury it suffered on its own as an organization. Id. at 379, 388. Regarding this injury, the Second Circuit concluded that:

> Even assuming that such expenditures "perceptively impaired" [Knife Rights'] activities, they at best demonstrate past injury. Such injury might admit standing to sue for compensatory damages. But it is not an injury that can be redressed through the prospective declaratory and injunctive relief sought in this action.

Id. at 388 (emphasis in original). Thus, under the Second Circuit's reasoning in Knife Rights, the injury alleged by NPPA does not provide NPPA organizational standing to pursue a claim for the sought after injunctive or declaratory relief. SAC ¶¶ 39, 49.

NPPA attempts to convert its alleged injury dating back to 2011 into a prospective one by citing a FINEST Message issued by the NYPD on September 14, 2018 (the "Message"). See SAC ¶ 50; SAC, Ex. H (NYPD FINEST Message, dated September 14, 2018). "The NYPD's 'FINEST' messaging system allows the transmission of legal directives to the NYPD's commands." Floyd v. City of New York, 959 F. Supp. 2d 668, 684 n.61 (S.D.N.Y. 2013). In the Message,

8

NYPD reminded its officers to review their responsibilities when dealing with members of the press, such as "not interfer[ing] with photographing or videotaping by properly credentialed members of the press." SAC, Ex. H. The Message also reminded officers that "parking of police (or other agency vehicles) . . . in areas that are reserved by sign for the parking of press vehicles . . . [was] strictly prohibited absent urgent or necessary police action." Id. Despite the fact that the Message as a whole states a policy that NPPA would presumably find unobjectionable, NPPA appears to focus on the phrase "[i]n light of recent events regarding recording of police actions" at the beginning of the Message. According to NPPA, the inclusion of this phrase necessarily suggests that there had been a number of instances that constituted violations of press members' rights. This argument is without merit. The relied upon statements in the Message are non-specific and consequently cannot be used to establish a violation of any NPPA member's rights, upon which an injury to NPPA could be predicated. Further, the SAC is devoid of any allegation suggesting that the alleged conduct by defendants had persisted—and that NPPA had repeatedly been injured as a consequence—during the period of years between the incidents described in the SAC and the issuance of Message.[1] The Message is not a substitute for such

---

[1] Even were we to assume, contrary to the Message, that the alleged "continuous and ongoing nature of the Constitutional violations at issue," SAC ¶ 67, has created a prospect of NPPA expending additional resources in

9

an allegation. Moreover, given the clear policy of non-interference that is currently in effect, there is no basis for asserting a claim for equitable relief against the City, its former officials and individual NYPD officers. Therefore, the Court dismisses NPPA's claim that it seeks to assert on its own for lack of standing to the extent it seeks any form of equitable relief.

2. <u>Claim for Compensatory Damages</u>

As discussed above, the Second Circuit's reasoning in <u>Knife Rights</u> indicates that the injury alleged by NPPA might provide NPPA organizational standing to pursue a claim for compensatory damages. However, NPPA has failed to proffer sufficient facts to sustain its assertion of organizational standing to pursue any such claim. The Second Circuit has repeatedly observed that, in contrast to a motion to dismiss for failure to state a claim, "when the question to be considered is one involving the jurisdiction of a federal court, jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." <u>Shipping Fin. Serv. Corp. v. Drakos</u>, 140 F.3d 129, 131 (2d Cir. 1998). Therefore, in order to pursue a claim to recover compensatory damages for resources it allegedly expended, NPPA must adduce sufficient facts that

---

advocating its members' rights going forward, NPPA still has failed to establish organizational standing to pursue a claim for equitable relief because it has failed to show that such expenditures are "certainly impending" and not merely possible. <u>Knife Rights</u>, 802 F.3d at 389.

10

establish an injury-in-fact on their face and without the benefit of any inference that may be drawn therefrom.

To establish an injury-in-fact, an organizational plaintiff must show that it has suffered "a 'perceptible impairment' of [its] activities." Nnebe, 644 F.3d at 157. NPPA's allegation of injury is, in essence, that it "dedicated significant time, money, and resources towards advocating for its members' rights and getting criminal charges against its members dismissed after its members were arrested by the NYPD for doing nothing more than performing the responsibilities of their jobs." SAC ¶ 49.[2] Defendants argue that the resources NPPA allegedly expended in advocating its members do not amount to legally cognizable injury. Contrary to defendants' contention, the Second Circuit has "explicitly rejected the argument that litigation expenses are insufficient to demonstrate an injury in fact for the purposes of Article III standing." Mental Disability Law Clinic, Touro Law Ctr. v. Hogan, 519 F. App'x 714, 717 (2d Cir. 2013).

However, NPPA still has failed to satisfy its burden to affirmatively show that it has suffered injury-in-fact sufficient

---

[2] NPPA's conclusory allegation that it expended time and resources in "supporting" its members in connection with the challenged conduct by defendants, see, e.g., SAC ¶¶ 86, 94, does nothing to enhance its standing. To establish organizational standing, an entity must sufficiently allege that "the defendant's conduct or policy interferes with or burdens an organization's ability to carry out its usual activities." De Dandrade v. U.S. Dep't of Homeland Sec., 367 F. Supp. 3d 174, 182 (S.D.N.Y. 2019) (emphasis added). The SAC is completely devoid of any allegation detailing how the general support that was purportedly provided by NPPA was inconsistent with NPPA's ordinary operations of advocating its members' rights.

for organizational standing. As discussed earlier, the SAC focuses on four incidents: the NYPD's operation to expel protesters from and deny them access to the Zuccotti Park on November 15, 2011; an NYPD officer's interference with NPPA member Stolarik's attempt to record police actions at the Winter Garden on December 12, 2011; an NYPD officer's arrest of Keith on the Brooklyn Bridge on October 1, 2011; and an encounter between defendant NYPD Lieutenant Daniel Albano and Keith on September 15, 2012. NPPA has failed to establish any injury based on the incidents involving Stolarik and Keith because the SAC provides no information as to how—or even whether—NPPA expended any resources or time assisting either of them in connection with these incidents. The same defect applies to NPPA's pleading of injury-in-fact based on the November 15, 2011 Zuccotti Park incident. The SAC does not provide any information—such as the number of members it assisted, the names of arrested NPPA members who it assisted or any estimate of the amount of time and money it expended in assisting its members—that would help us determine that it actually expended any resources in defending its members who were arrested or criminally charged in connection with the Zuccotti Park incident.

NPPA's failure to provide at this late date any specifics to support its assertion of injury-in-fact requisite for organizational standing is dispositive and inexcusable. First, NPPA was well aware from the defendants' pre-motion letter, which

12

preceded NPPA's motion for leave to amend, that defendants were challenging NPPA's standing. Second, the absence of data to support injury-in-fact is particularly striking since the record of NPPA members who were represented by it should presumably be in NPPA's possession. Third, it is noteworthy that NPPA has already obtained a significant amount of discovery materials from defendants. Discovery between NPPA and defendants began on May 1, 2014. See ECF No. 99. On November 19, 2014, on a motion to compel by plaintiffs, the Court issued an order, requiring defendants to produce certain documents "including arrest records." See ECF No. 114. Defendants subsequently requested a stay of discovery with respect to documents not covered by the Court's Order of November 19, 2014, citing ongoing settlement discussions. See ECF No. 144. However, the Court denied the request. See ECF No. 146. By August 2016, the parties had already completed a substantial portion of deposition discovery. See ECF No. 176.

In sum, having failed to establish that the alleged conduct by defendants caused any "perceptible impairment," or even any adverse effect, to its ordinary advocacy operations, NPPA has failed to satisfy its burden to affirmatively show an injury-in-fact requisite for organizational standing. Therefore, NPPA's claim for compensatory damages is dismissed for lack of standing.

B. **Associational Standing**

As previously discussed, under the associational standing theory, "an association has standing to bring suit on behalf of its members" under qualifying circumstances. Hunt v. Wash. St. Apple Advert. Commission, 432 U.S. 333, 343 (1977). To establish associational standing, an organizational plaintiff must show that "(1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Id. (numberings modified). The Supreme Court has treated this test as requiring, inter alia, "an organization suing as representative to include at least one member with standing to present, in his or her own right, the claim (or the type of claim) pleaded by the association." United Food and Com. Workers Union Local 751 v. Brown Grp., Inc., 517 U.S. 544, 555 (1996). While the first prong of the test prescribed in Hunt does not go as far as requiring an organizational plaintiff asserting associational standing to identify any member with standing in his or her own right by name, the organizational plaintiff must at a minimum "make specific allegations establishing that at least one

identified member had suffered or would suffer harm." Summers v. Earth Island Inst., 555 U.S. 488, 498 (2009).[3]

### 1. Pleading of Associational Standing

NPPA's pleading of associational standing fails to satisfy the Hunt test. In the SAC, NPPA identifies two of its members by name, Stephanie Keith and Robert Stolarik. However, the allegations with respect to those members are insufficient to support NPPA's associational standing. Stephanie Keith does not have standing in her own right because, although she was an original plaintiff, see ECF No. 1 (Complaint) at ¶ 23, Keith eventually settled with defendants and consented to the dismissal of all of her claims with prejudice. See ECF No. 205. Therefore, allegations about any harm that Keith may have suffered cannot provide any support to NPPA's assertion of associational standing. See Summers, 555 U.S. at 494 (rejecting an organizational plaintiff's assertion of associational standing based on a harm

---

[3] We note that there is a split in this District as to whether the associational standing doctrine requires identification by name of a member with standing. Compare Equal Vote Am. Corp. v. Congress, 397 F. Supp. 3d 503, 509 (S.D.N.Y. 2019) (McMahon C.J.) (Stating "in order to bring claims on behalf of its members under the 'associational standing' doctrine, an organizational plaintiff . . . must identify, by name, at least one member with standing."), with Nat. Resources Def. Council, Inc. v. Wheeler, 367 F. Supp. 3d 219, 227 (S.D.N.Y. 2019) (Pauley J.) and New York v. U.S. Dep't of Com., 351 F. Supp. 3d 502, 606 n.48 (S.D.N.Y. 2019) (Furman J.), rev'd on other grounds, 139 S. Ct. 2551 (2019) (Concluding that an organizational plaintiff must establish that at least one identified member has suffered or would suffer harm but need not identify by name any member with standing in his or her own right). We need not address this issue in resolving this motion because NPPA's pleading of associational standing fails under either standard. Thus, we will proceed under the more lenient standard.

allegedly suffered by its member who settled with respect to that harm).

Nor are the allegations about Robert Stolarik sufficient to establish NPPA's associational standing. NPPA alleges that NYPD officers physically blocked its member Robert Stolarik while he was attempting to record police actions in connection with a demonstration that took place at the Winter Garden on December 12, 2011. SAC ¶¶ 40-42.[4] Even were we to assume that Stolarik sustained a harm sufficient under the first prong of the Hunt test, NPPA's assertion of associational standing based on Stolarik still fails because of the third prong of the Hunt test, which requires a showing that "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Hunt, 432 U.S. at 343. Insofar as the claim NPPA seeks to assert on behalf of its members is predicated solely on the interaction between Stolarik and the NYPD on December 12, 2011 at the Winter Garden, facts involving Stolarik as an individual would have to

---

[4] Defendants argue that NPPA does not have standing to pursue any claim based on allegations involving Stolarik because he filed a separate lawsuit on his own, went to trial, and received a non-prevailing jury verdict. See Defs.' Opp'n at 10. This argument does not withstand close analysis. In his own lawsuit, Stolarik did not make any allegation as to the December 12, 2011 incident at Winter Garden and only asserted claims under the Fourth and Fourteenth Amendments to the United States Constitution based on his arrest on August 4, 2012 in the Bronx in a context completely unrelated to the OWS protests. See Stolarik v. City of New York, et al., 15 Civ. 5858 (RMB), First Amended Complaint (ECF No. 18). Accordingly, Stolarik's individual action has no bearing on this action, which is a lawsuit based on the alleged violations of his First Amendment rights, and similar rights under the New York State Constitution, in connection with the December 12, 2011 incident as part of the OWS protests.

dominate, and Stolarik "would have to be involved in the proof of" NPPA's associational standing claim. Bano v. Union Carbide Corp., 361 F.3d 696, 714-15 (2d Cir. 2004).

Therefore, NPPA has failed to satisfy Article III's requirements for associational standing, and any claims it seeks to assert on behalf of its members are dismissed.

### 2. Lack of Subject Matter Jurisdiction

Separate from NPPA's failure to satisfy Article III's requirements for associational standing, the claims NPPA seeks to assert on behalf of its members should alternatively be dismissed for lack of subject matter jurisdiction. "It is the law of [the Second] Circuit that an organization does not have standing to assert the rights of its members in a case brought under 42 U.S.C. § 1983, as [the Second Circuit has] interpreted the rights § 1983 secures to be personal to those purportedly injured." Nnebe v. Daus, 644 F.3d 147, 156 (2d Cir. 2011) (citing League of Women Voters of Nassau Cty. v. Nassau Cty. Bd. of Supervisors, 737 F.2d 155, 160 (2d Cir. 1984)). While acknowledging different approaches adopted by other circuits, the Second Circuit recently reaffirmed this doctrine in Centro de la Comunidad Hispana de Locus Valley v. Town of Oyster Bay, 868 F.3d 104, 122-24 (2d Cir. 2017). Accordingly, NPPA cannot assert on behalf of its members any claim under § 1983. Thus, the only remaining claims are those predicated on alleged violations of its members' rights under the New York

17

State Constitution.[5] NPPA relies on supplemental jurisdiction, as it must, in invoking the Court's jurisdiction over these claims.

Pursuant to 28 U.S.C. § 1367(c)(3), a district court "may decline to exercise supplemental jurisdiction over a claim" where "the district court has dismissed all claims over which it has original jurisdiction." See also Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."). Therefore, we decline to exercise supplemental jurisdiction over the claims predicated on NPPA members' rights under New York law that NPPA seeks to assert on behalf of its members.

---

[5] "The New York State Constitution provides a private right of action where remedies are otherwise unavailable at common law or under § 1983." Allen v. Antal, 665 F. App'x 9, 13 (2d Cir. 2016). Given the New York Court of Appeals' conclusion that an individual's rights regarding the freedom of expression and press under Article I, Section 8 of the New York State Constitution are broader than those under the First Amendment to the United States Constitution, Immuno AG. v. Moor-Jankowski, 77 N.Y.2d 235, 249 (N.Y. 1991), the NPPA members might have private causes of action under the New York State Constitution that are distinct from the claims they might have been able to bring under 42 U.S.C. § 1983. In resolving the pending motion, we assume that NPPA members do have separate private causes of action under the New York State Constitution without expressing any view as to the merits of this proposition.

### III. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss NPPA's Second Amended Complaint is granted for lack of standing. This Memorandum and Order resolves ECF Docket Entry No. 246. As there are no remaining plaintiffs, the Clerk of Court is respectfully directed to enter judgment for defendants and close the case.

**SO ORDERED.**


Dated:   New York, New York
         March *12*, 2020

*[signature]*
NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE